## Commonwealth ex rel. Goichman *v.* Goichman, Appellant.

Argued March 23, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Michael J. Pepe, Jr.,* with him *William A. Goichman,* in propria persona, for appellant.

*Martin J. Cunningham, Jr.,* with him *Henderson, Wetherill, O'Hey & Horsey,* for appellee.

OPINION BY SPAULDING, J., September 19, 1973:

Appellant William Goichman appeals from an order of Judge John R. HENRY of the Court of Common Pleas of Montgomery County directing him to pay $325 a week for the support of his three children.

Appellant, a Philadelphia attorney, and his wife have been separated for four years. Their children are presently 11, 13 and 15 years of age, and reside with the mother in the family home in Jenkintown, Pennsylvania. In the year of their separation, appellant was ordered to pay $425 per week support to his wife and children, an order affirmed by this Court on appeal. *Commonwealth ex rel. Goichman v. Goichman,* 219 Pa. Superior Ct. 367, 281 A. 2d 333 (1971). In December, 1971, appellant petitioned for a reduction of that order, and, a month later, petitioned for revocation of support for his wife. After a hearing, the court below terminated the original $425 order and entered the $325 weekly support order for the children only, which is the subject of this appeal.

Our review of support orders is limited to a determination of whether there is evidence to sustain the order of the hearing judge. We will reverse such orders only if there has been an abuse of discretion. We must sustain such awards if they can be shown to rest on any valid ground. *Commonwealth ex rel. Heineman v. Heineman,* 185 Pa. Superior Ct. 32, 137 A. 2d 349 (1958); *Commonwealth ex rel. Fishman v. Fishman,* 213 Pa. Superior Ct. 342, 247 A. 2d 810 (1968). However, support orders are not to be confiscatory or punitive of the father or husband, and the father is to be left with a reasonable allowance for his own living expenses. *Commonwealth ex rel. Haimowitz v. Haimowitz,* 221 Pa. Superior Ct. 364, 292 A. 2d 502 (1972).

Initially, we consider the hearing judge's finding as to the needs of the Goichman children: "The family had a high standard of living prior to Respondent's leaving the marital domicile in 1970; and has continued to live in a comfortable manner since then. This was made possible by Respondent's great financial success. . . .

"The expenses of the children, as testified to by Petitioner, exceed Seventeen Thousand Dollars ($17,000.00) per year. This amount was arrived at by prorating the expenses of the family for common items (i.e., real estate taxes) and adding to this the expenses of the children. Although the amount expended to raise these three children appeared to be considerable, it was substantiated by Petitioner. It must be remembered that it was Respondent who acclimated them to this standard of living and it is to this standard that Respondent must be held if he is so able."

The lower court's finding of $17,000 of need was predicated on Mrs. Goichman's presentation of a list of her total 1971 expenditures, prorated for the children's share. Appellant had introduced a breakdown of Mrs. Goichman's checking account for a one-year period purporting to show that the amount spent on the children was only slightly in excess of $5,000.[1] We will not interfere with the finding of the court below on this point, particularly as it reflects a mere extension of the family's pre-separation lifestyle, to which appellant had acclimated them. See *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 237 A. 2d 181 (1967).

As to the family's financial condition, the court below further found that while Mrs. Goichman had been employed during the 1970-1971 period, she was

---

[1] There was evidence that Mrs. Goichman's spending was done through savings withdrawals as well as through her checking account.

unemployed at the time of the hearing. Her temporary source of income was deemed nonrecurrent, the court finding that she was unable to provide support for her children. Ordinarily, the earning capacity of a wife who is able to work should be a relevant consideration and, where equitable, a credit towards the husband's support obligation. *Commonwealth ex rel. Borrow v. Borrow*, 199 Pa. Superior Ct. 592, 185 A. 2d 605 (1962). Here, however, as Mrs. Goichman's termination of employment was related to the health needs of one of her children, we will not disturb the hearing judge's finding that she had no effective earning capacity to affect appellant's support liability.

We come, then, to the difficult task faced by the court below of determining Mr. Goichman's earning capacity. Appellant concedes that his children are entitled to some measure of paternal support. He argues, however, that while he must abide by the 1969 finding,[2] affirmed by this Court, that his annual earning capacity was at least $60,000, his income has declined significantly since 1969, warranting a reduction in the order. The court below found: "Although Respondent's income tax return is usually a help in determining his income and earning capacity, this is not the situation here. The earning capacity of Respondent, after taxes, as determined in 1970 by Judge DITTER, was at least Sixty Thousand Dollars ($60,000.00) per year. There was no reason to assume, and none was shown, that this was not the situation at present.

"Although Respondent alleged a great decrease in earning capacity, there was nothing to substantiate this.

---

[2] At the time the original order was entered, Judge DITTER found that appellant's tax records were "of no help in determining the true extent of the money he makes." As appellant is claiming changed circumstances since the date of the original order, the hearing judge was concerned with his financial situation for 1970 and 1971.

"Respondent testified to living expenses of approximately Twenty-nine Thousand Five Hundred Dollars ($29,500.00) per year, wholly exclusive of the support order which he paid at that time. When considering that order, Four Hundred Twenty-five Dollars ($425.-00) per week or Twenty-two Thousand One Hundred Dollars ($22,100.00) per year, the amount of money spent by Respondent in 1971 was Fifty-one Thousand Six Hundred Dollars ($51,600.00).

"Respondent petitioned to reduce the amount of support awarded for his children, while continuing to live in a lavish style. This Court felt that if there was an actual decline in Respondent's income and assets, a corresponding change would be apparent in Respondent's life style. However, no change was so manifested."

More specifically, we can infer that the court below found appellant to have available to him over $50,000 a year, as it found that the $16,900 support represented "one third of his spendable income".

In determining the propriety of such awards, we are concerned with the father's overall ability to pay the amount of the order. This requires the determination of his "bona fide earning power" and not necessarily "income" as represented on a tax return. In this connection, the earning potential of the husband is to be considered part of his earning power. *Hecht v. Hecht*, 189 Pa. Superior Ct. 276, 150 A. 2d 139 (1959); *Fishman*, supra. "The net income of a defendant as shown on income tax returns is not to be accepted in a support case as the infallible test of his earning capacity. Particularly is this true when the defendant is in business for himself and is allowed substantial business 'expenses,' which enable him to live luxuriously before spending his taxable income." *Commonwealth v. Miller*, 202 Pa. Superior Ct. 573, 577, 198 A. 2d 373, 375 (1964).

Appellant's major support for his contention of reduced income consisted of his income tax returns for

the relevant years, 1970 and 1971. He asserts that these show an earning capacity of $12,530 and $19,700 respectively.[3] The court below refused to lend any credence to this argument. Giving considerable weight to the hearing judge's credibility findings, we concur in his refusal to rely on tax returns. The court's finding was apparently primarily based on appellant's lavish spending on himself, which, by appellant's own admission, totaled some $29,552 in 1971.[4] Appellant explained that he was only able to sustain this level of expenditure, together with the $22,100 support order then in effect, by taking loans and liquidating securities in an amount in excess of $52,000. The hearing judge placed little credence in this rebuttal.

A review of appellant's tax returns indicates considerable deductions for noncash and/or potentially personal outlays. There were deductions for depreciation of over $4,000 and $3,000 respectively. We may, in considering all of the circumstances, add back the better part of such nonoutlay deductions in arriving at a picture of true earning power. *Commonwealth ex rel. Miller v. Miller*, supra. We note, too, that Mr. Goichman, as a private practitioner, includes in his business expense deductions several items which could reasonably be explained as primarily personal in nature. Appellant's stated after-tax income in each year is reduced by large "extraordinary losses", totalling some $17,000 and $15,000 respectively, resulting from the operation of real estate ventures in which he is involved. We have no way of knowing whether these resulted from cash outlays by appellant or whether they were mere

[3] These figures were arrived at by estimating what appellant's after tax income would have been, given his reported adjusted gross income, had there been no support-payment tax deductions.

[4] $5,000 of this was listed as legal and accounting expenses. Among the more luxurious items were $2,000 a year on clothing, $1,000 on cleaning, $4,562.50 on food.

accounting losses. The court below apparently felt they were the latter. Counsel for appellee argues that Mr. Goichman's flow of after-tax dollars as shown by appellant's tax returns indicates that he had available to him over $50,000 after taxes in 1970 and nearly $38,000 after taxes in 1971.[5] Appellant argues that this analysis considers items that are not income, but are rather returns of capital. He points out additionally, that in the future he will not enjoy the tax advantages of support payment deductions.

Upon consideration of the entire record, we agree with the hearing judge that income as represented on appellant's tax returns, accurate as they may be, is not indicative of his real earning power. While we are reluctant to attempt to place an exact amount on that earning capacity, we conclude from a review of the record that the evidence could support a finding that the income potential was some twenty percent lower than that suggested in the opinion of the court below. We do not feel, however, that this possible discrepancy signals such a drastic decline in appellant's earning power to compel a finding of abuse of discretion. Nor does it compel the conclusion that the amount of support the Goichman children presently receive is unjustified.[6]

We do find, however, that the court below erred in its stated failure to consider the income potential from trust funds established by appellant for his children prior to the separation. There was testimony that the

---

[5] These figures were arrived at by adding Mr. Goichman's wages, interest, law practice net income, cash throw-offs from real estate partnerships, long-term capital gains, and depreciation deducted, and subtracting taxes actually paid.

[6] We note that while our courts have steadfastly adhered to a one-third rule for spousal support orders, *Fishman*, infra, there is no rule limiting child support orders to that fraction of a father's earnings. *Commonwealth ex rel. Warner v. Warner*, 198 Pa. Superior Ct. 124, 181 A. 2d 888 (1962).

children's assets in savings certificates and mutual funds totalled in excess of $104,000. To the extent that such assets are income-producing, their total and income potential should be considered in determining the father's support obligation. In *Doelp v. Doelp*, 219 Pa. Superior Ct. 420, 281 A. 2d 721 (1971), we held that where trust funds were established for the children's support and where the father's ability to meet support obligation was in question, income from such assets is a proper consideration in the determination of the familial need and paternal support duty. Such a rule is rooted in sound policy and ought to be extended, wherever equitable, in order to encourage the establishment of such trusts for the protection of children. If the rate of return on assets held by the father is a proper consideration in determining his ability to pay support, *Hecht*, supra; *Fishman*, supra, it is symmetrical, equitable and consistent with the nonpenal nature of support decrees, to require that the return on children's assets be considered as part of their earning potential, possibly reducing their support needs. *Doelp*, supra. After determining the nature, liquidity, availability, and income potential of these trusts funds, they should be considered by the court below in determining its support order.

We thus remand this case for further proceedings consistent with this opinion.