## Weiser, Appellant, *v.* Weiser.

Argued June 11, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

490

*Marvin Comisky,* with him *Norman Perlberger,* and *Blank, Rome, Klaus & Comisky,* for appellant.

*Paul Matzko,* with him *Krusen, Evans & Byrne,* for appellee.

OPINION BY WATKINS, P.J., March 29, 1976:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County, Family Division, in which the court below directed the defendant-appellee, Gerald J. Weiser, to pay to the wife, Norma Rae Weiser, the appellant, the sum of $150 per week for the support of the wife and three children.

The position of the wife in this appeal is that the court's order is inadequate because the court failed to take into consideration the husband's earning potential and the standard of living to which he had acclimated the family.

The husband is a patent lawyer who had been employed in the law firm of Dechert, Price and Rhoads at a yearly salary of about $40,000.00. In March, 1973, the husband terminated his employment at Dechert, Price and Rhoads and went into practice on his own, eventually forming his own partnership with two other attorneys.

His earnings from the new employment at the time of the hearing were $340.00 per week.

The parties were married on April 15, 1951. The husband moved out of the family home on July 4, 1973. The three children of the marriage were 20, 18 and 16 years of age and remained with the wife. Two of the children are presently enrolled in college while the youngest is a student at a private boarding school. The wife has a separate income of $10,000.00 a year. At the hearing before the court below the wife presented evidence that tuition and expenses of the children's education amounted to $16,715.00 per year and the household expenses amounted to over $20,000.00 per year. We are not convinced that this is not exaggerated, especially the household expenses.

This Court's review of support orders is limited to a determination of whether there is evidence to support the order and if so, the order will be reversed only if there has been an abuse of discretion. *Commonwealth ex rel. Goichman v. Goichman,* 226 Pa. Superior Ct. 311, 316 A. 2d 653 (1973).

Appellate courts are becoming more reluctant to substitute themselves as super-support courts when they have not had the opportunity to see and hear the witnesses and so determine credibility. We are mindful of the rule which provides that it is the earning potential of the father which is the determinative factor in ascertaining the ability to pay support to the family rather than the actual earnings. *Commonwealth ex rel. Raitt v. Raitt,* 203 Pa. Superior Ct. 226, 199 A. 2d 512 (1964).

It is undisputed that a father or husband cannot intentionally reduce his actual earnings and then use the reduction in earnings to obtain a reduction in the amount of support he must provide for his family. Courts have traditionally viewed with suspicion any sudden reduction of the support payments based on such income reductions. *Commonwealth ex rel. Snively v. Snively,* 206 Pa. Superior Ct. 278, 212 A. 2d 905 (1965).

Be that as it may, we are not constrained to say that a man once he has established a certain income level for himself and his family in the employ of another cannot decide to go into business for himself even though it results in a decrease of his present earnings. A man should have freedom of choice to be an employee of another or to establish his own business even though such change may result in present financial sacrifice with the hope of future increased income.

The court below in a very detailed and carefully reasoned opinion had this to say:

"Counsel for petitioner in arguing that defendant's former salary should control submitted precedents in which a defendant either intentionally left a lucrative position and thereby drastically reduced his earnings, intentionally kept his earnings to a minimum, or asserted a reduced income out of proportion to the amount he appeared to be spending. *Commonwealth ex rel. McNulty v. McNulty,* 226 Pa. Superior Ct. 247 (1973) (lower court found that defendant's testimony was incredible and that his reduction in income was intended to defeat his wife's claim to support); *Commonwealth ex rel. Snively v. Snively,* 206 Pa. Superior Ct. 278 (1965) (defendant voluntarily quit his job and went to college, virtually eliminating his income and taking on a financial burden in the form of school expenses); *Commonwealth ex rel. Raitt v. Raitt,* 203 Pa. Superior Ct. 226 (1964) (a pharmacist with post graduate degrees had an earning potential far greater than the amount he made in a local pharmacy); *Commonwealth v. Trimble,* 197 Pa. Superior Ct. 644 (1962) (defendant made an insufficient effort to obtain employment and deliberately withdrew from income producing work); *Commonwealth ex rel. Kane v. Kane,* 193 Pa. Superior Ct. 98 (1960) (defendant's standard of living belied his claim to a very low income); *Commonwealth ex rel. Wieczorkowski v.*

*Wieczorkowski,* 155 Pa. Superior Ct. 517 (1944) (son contributed his services to parent for his board and keep). In such situations the courts have indicated that the husband's earning potential should be the basis for the support order.

"However, in the instant case, there was no indication that Mr. Weiser struck out on his own so as to defeat his family's right to support. In fact he began his new association several months before he was separated from Mrs. Weiser. There was no evidence that he was concealing income or that his standard of living was inconsistent with his claimed earnings. Moreover, the amount he was drawing was not inconsiderable.

"A case which is more on point is *Commonwealth ex rel. Shaffran v. Shaffran,* 92 Montg. Co. L.R. 339 (1969), aff'd. 217 Pa. Superior Ct. 856 (1970). This case involved a husband who left a job in an advertising agency, where his monthly income was $1350, to form his own agency. His monthly income for the first year was about half his former income but it increased in successive years so that at the time of the court's decision, he was earning about $986. The court found that the change was not made to deliberately reduce his income but for the purpose of avoiding a limited future in the former agency and with the hope of increased future earnings. The court entered a support order averaging about 62% of his current income for the maintenance of his wife and two children. The wife wanted the order to be based on his past income. The Court stated that '(a) support order should not be based on the husband's past earnings, if it would be unrealistic to do so in light of present circumstances.' *Id.* at 341. See also, *Commonwealth ex rel. Haimowitz v. Haimowitz,* 221 Pa. Superior Ct. 364 (1972).

" 'The Court may ordinarily only make support orders based on a husband's property, income, and earning ability *at the time of the hearing,* not on what they may have been in the past.' *Commonwealth v. Testa,* 226 Pa. Superior Ct. 585, 588 (Advance Reports, 1974). Accordingly, based upon Mr. Weiser's earning ability at the time of the hearing the award in the present case was approximately one half of Mr. Weiser's spendable income after taxes. 'Although there is no rule which says that an award for a wife and children may not exceed one half of the husband's income, it must not, nevertheless, impose an unreasonable burden on him.' *Commonwealth ex rel. Lipsky v. Lipsky,* 214 Pa. Superior Ct. 215, 218 (1969).

"Mr. Weiser had considerable expenses. His rent was $58.50 weekly; his car payments were $33.00 per week. He alleged that he spent $60.00 per week on food, about $5 per week on clothing, $7.50 for Blue Cross and Blue Shield for the entire family, totalling $164.00, plus additional amounts for other need. In all he alleged the total of his weekly expenses and outstanding bills[1] to be $587.70. No matter how inflated that figure might have been, it was clear that he was in need of at least $165 taking into account the amounts specifically listed above, additional expenses and his debts. This figure when added to the support order of $150.00 totals $315.00, which could well be the net remainder after taxes are deducted from his earnings of $400 per week in 1973, and unquestionably when deducted from his draw of $340 at the time of the hearing."

---

1. "Included in this amount was approximately $261.00 per week to reduce over $9,000 in bills incurred by him and his wife. As Mr. and Mrs. Weiser own a substantial residence, the arrangements Mr. Weiser has made to pay these obligations may serve to avoid a judgment upon that property. In addition to the debts previously mentioned, Mr. Weiser has borrowed $21,000 against his life insurance policy."

As we said in *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa. Superior Ct. 301, 306, 310 A. 2d 672, 674 (1973) : "It seems certain that appellee (wife) and her children are quite capable of spending any sum appellant (husband) is ordered to provide for them."

However, in this case, as pointed out by the court, his change of employment came before the separation so that it is contended that it was not for the purpose of reducing the income of the family on separation. As he was a lawyer, we are not so naive as to believe that support payments may not have been anticipated by him. Another disturbing factor is that he continued his own standard of living as if he were receiving the income to which he had been accustomed and which was clearly extravagant in relation to his current income. This is illustrated by the fact that he took three expensive vacations since the separation and continued his life style.

Appellee's change in employment resulted in an income reduction of more than one half. It is also a fact that as a partner in the law firm he could control the draw and his weekly income of $340 may not accurately reflect his new earnings. It is for these reasons that we feel the award is inadequate. Most certainly he has the right to establish his own business but not at the expense of his family, whose life style he created based on $40,000.00 per year income which now must be changed to meet the new conditions while he continues to enjoy his usual high standard.

Under the circumstances set forth in this case, we feel constrained to hold the amount of the award to be an abuse of discretion and direct that the award be modified upward to provide for the payment of support of the wife and three children to the sum of $200 weekly.

JACOBS, J., dissents.

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

Appellant, Norma Rae Weiser, has asked that we reverse the support order of the Court of Common Pleas of Philadelphia County awarding her $150.00 per week for herself and her three children. She argues, first, that the lower court abused its discretion when it failed to consider appellee's earning capacity and instead based its support award upon his actual earnings, and, second, that the lower court erred when it gave credence to appellee's testimony about his current income. The majority holds that the amount of the award constitutes an abuse of discretion, and directs that the award be increased to $200.00 per week. I cannot join this disposition. Although I find the record before us inadequate to sustain the order of the lower court, I find it an even more inadequate basis for this court's independent computation of a new award. In my view, the better disposition would be to reverse the order of the lower court and remand for a new evidentiary hearing. At such a hearing, the lower court could order further testimony in the areas in which the instant record is most unsatisfactory: the income actually available to appellee in his new position, the reasons for his voluntary change in employment five months prior to his separation from his wife, and the financial needs and resources of appellant.

## I

In *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Superior Ct. 229, 236-237, 312 A.2d 58, 63 (1973), this court explained the importance of an adequate record in custody proceedings: "So that there may be assurance . . . that the fact finding process and ultimate adjudication did focus on . . . the issue to which 'all other considerations are subordinate,' . . . the hearing judge should file in every custody case a comprehensive opinion reflecting a thorough analysis of the record as a whole and specifying the reasons for the ultimate decision."

In my view, an adequate record that includes all the important issues and the relevant evidence is at least as important in support cases. Typically, in such cases, the actual needs of the dependents and the resources of the wage earner are obscured by the bitter accusations and competing claims of the parties. It is indeed difficult for the hearing judge, who observes the witnesses and assesses their credibility, to reject exaggeration and concealment and to formulate an award that reflects the real requirements of the parties. Because of the complexity of the issues in support cases, a "comprehensive opinion reflecting a thorough analysis of the record as a whole" is essential.

I recognize the limited scope of appellate review in support proceedings. We have often repeated the proposition that "[i]n a support proceeding, the trial judge who sees and hears the witnesses is in a better position than the Superior Court to decide the issue on its merits." *Commonwealth ex rel. Friedman v. Friedman,* 223 Superior Ct. 66, 67, 297 A.2d 158, 159 [allocatur refused, 223 Pa. Superior Ct. *xxxv*] (1972). An appellate court arrives at its decision on the basis of the printed record before it. Consequently, absent a clear abuse of discretion, we will defer to the order of the lower court. *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer,* 226 Pa. Superior Ct. 301, 303, 310 A.2d 672, 673 (1973) ; *Commonwealth ex rel. Long v. Long,* 181 Pa. Superior Ct. 41, 43, 121 A.2d 888, 889 (1956). I suggest that even when the lower court has erred, it is preferable to remand the case to that court, so that it may amend the support order, rather than for us to make our own independent revisions. *See Commonwealth ex rel. Goichman v. Goichman,* 226 Pa. Superior Ct. 311, 316 A.2d 653 (1973).

I submit, however, that in the exercise of our review powers, we must do more than accept as given the analysis and conclusions of the lower court. Although we cannot nullify the fact-finding function of the hearing

judge, *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A.2d 350 (1953), "[W]e do, however, have the power to require such procedures as will ensure that the record, including the opinion filed by the hearing judge in support of the [custody] order, is complete." *Commonwealth ex rel. Grillo v. Shuster, supra* at 234, 312 A.2d at 62. We are also charged with the responsibility of seeing that the relevant legal principles are correctly applied. *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa. Superior Ct. 167, 172, 138 A.2d 225, 227 (1958). Without careful scrutiny of the record to ascertain whether the evidence supports the reasoning of the lower court, this court cannot meet its responsibility of determining whether there has been an abuse of discretion, that is, whether an order "misapplies the law" or reaches a "manifestly unreasonable, biased, or prejudiced result." *Girard Trust Bank v. Remick,* 215 Pa. Superior Ct. 375, 377, 258 A.2d 882, 884 (1969).

Applying these considerations to the case before us, it appears to me that the record does not provide a sufficient basis for the conclusions of the hearing judge. To explain why I find this to be so, it is necessary to refer to the testimony in the case, first appellee's, and then appellant's.

## II

In order to decide whether to base its support decree upon appellee's current income or his potential earnings, the lower court found it necessary to consider appellee's reasons for leaving a well-paying job with a prestigious law firm as well as the evidence appellee submitted to substantiate his reported earnings. The lower court concluded that ": . . there was no indication that Mr. Weiser struck out on his own so as to defeat his family's right to support . . ." and that the record showed ". . . no evidence that he was concealing income or that his standard

of living was inconsistent with his claimed earnings." Opinion at 245a. I find these conclusions difficult to reconcile with appellee's contradictory and evasive testimony about his past and present income.

Although counsel for appellant questioned appellee with vigor and persistence, appellee's answers were reserved and unresponsive. For example, when asked on cross-examination, "What income did you enjoy as an employee of Dechert, Price and Rhoads?", appellee first answered, "I believe about $35,000.00". Appellee did not reveal that he had received an additional $5,000.00 in salary during the year in question until cross-examined further:

"Q.   So your annual rate for 1972 was $40,000.00 and not $35,000.00; is that correct?

A.   Before taxes, it is correct." (Record, 9a-10a). Appellee was even less responsive when appellant's counsel attempted to inquire about his income from sources other than the practice of law:

"Q.   Did you receive an inheritance from your father's estate?

A.   No, I don't have, directly.

Q.   Directly or indirectly, did you get any money from your father's estate?

A.   No, I did not.

Q.   You are not the beneficiary of your father's estate? Were you not the beneficiary under his will?

A.   My mother is the beneficiary of the will.

Q.   The answer is no?

A.   Yes, the answer is no.

Q.   Did you receive $12,000.00 from your mother?

A.   No, I did not.

Q.   Did you receive $12,000.00 from your father's estate?

A.   No.

Q.   We have the will here, Mr. Weiser. Do you want to reconsider your answer?

A. I tell you I did not receive any money from my father's estate.

Q. Did you receive any assets, any stocks or bonds?

A. Yes, I did." (Record at 16a).

When questioned about the income he was deriving from his new partnership, appellee offered contradictory and incomplete answers. He reported his personal income from the partnership as $17,381.00 on his 1973 Partnership Return (Exhibit P-2, Record at 202a) and stated that his efforts had produced $17,000.00 of the $62,963 earned by the partnership during that year (Record at 13a). He also asserted, however, that he had generated over 50% of the partnership's business (representing approximately $32,000.00 in fees). Although he attempted to resolve this obvious inconsistency by claiming that the $17,000.00 represented *net* income and that he had in fact produced more than 53% of the firm's *gross* income, Record at 14a, his testimony remains unconvincing. Moreover, the reliability of the tax returns in which appellee reported his personal income is questionable; for example, although no previous support order had been entered, and appellee was still married at the time, he listed himself as single on his 1973 State and Federal income tax returns, and claimed a $4,378.00 deduction on the Federal return for alimony paid. (Record at 11a-12a).

Even accepting appellee's testimony that at the time of the hearing he was drawing $340.00 per week from the partnership, it is not at all apparent to me how he was able to live in the manner he did on the income he reported. Appellee rented an apartment at the Plaza on the Parkway, paid an additional sum for rented furniture and parking (Record, 121a-123a), took three costly vacations during 1974 (Record at 23a-26a) and financed the purchase of a new automobile in June, 1974. In addition, appellee claimed that he had arranged with creditors to make weekly payments on over $9,000.00 in bills which

he and his wife had jointly incurred. At first, he contended that he was obligated to pay the creditors $587.00 per week. However, under cross-examination, he reduced this figure to one more consistent with his admitted earnings:

"Q. We are then down to about $475.00 a week that you have according to your testimony arrangements to pay that sum weekly to creditors; is that correct?

A. That is correct.

Q. Now, you testified that you only draw a gross amount of $450.00 a week?

A. That is right.

Q. You made commitments to pay creditors, exclusive of your own expenses which are reflected on page 1, exclusive of college expenses, page 3 of Schedule 4; how can you do this, Mr. Weiser?

A. I just exist by paying what I can. I don't have the money.

. . .

The Court: It looks to me as though the payments are approximately $475.00 a week, if he is paying at all.

The Defendant: That amounts to $200.00 a week if I divide the $9,000.00." (Record at 164a-166a).

In addition to these major expenditures, appellee testified that he had paid his wife $200.00 per week through June, 1974, and that he had also paid $16,000.00 in tuition for his three children and in psychiatric bills by that date (Record at 30a-31a).[1] He explained that he had borrowed $21,000.00 against his life insurance in order to meet those expenses. Even if this substantial loan permitted him to reserve most of his income for his own use,[2] his

---

1. Appellee did not pay his children's college or private school tuition for the 1974 school year (Record at 49a-50a).

2. Appellant's counsel pointed out that because of the loan, appellee was able to spend at least $13,000.00 of the $17,000.00 income he reported on his own expenses and on the alleged debts:

expenditures appear excessive when compared to the income to which he testified.

One more illustration may be given of why I find it difficult to credit appellee's testimony about his income. Appellee was questioned about his relationship with a young woman in Switzerland, and his receipt of several letters from her (Record at 40a-49a). Although he stated, "I don't know what these letters are all about, what language that is" (Record at 43a), he admitted to reading German, the language in which the letters were written, and to speaking it fluently (Record at 45a). He said that he had never seen the letters before (Record at 43a, 47a) and that he did not know any "Rose Marie." The letters, however, discussed such facts as the opening of appellee's new law offices (Exhibit P-3A, Record at 214a), and they had been found by appellant in appellee's briefcase.

Given such contradictory and evasive testimony, I find the record inadequate to sustain the lower court's decision to base the order of support on the income to which the appellee testified and which he reported in his income tax returns.

### III

My opinion of appellant's testimony is not much more favorable than it is of appellee's. To say the least, her responses to questions about her resources were extremely guarded. Although she admitted to receiving income from several trusts (Record at 86a) and to receipt of $10,000.00 in interest from her share of a condemnation award (Record at 87a-90a), she consistently disclaimed any

---

"Q. You borrowed $21,000.00 from your life insurance company and provided support for your wife and children at the rate of approximately $25,000.00 for the same period. So am I correct then in stating that the amount you took personally from your own income was only approximately $4,000.00?

A. I accept that, yes. . . ." (Record at 32a).

knowledge or understanding of her finances. Statements such as the following were frequent:

"It wouldn't refresh my memory. I don't take care of my financial matters, my brother does." (Record at 90a)

"Yes. I guess I wrote it. I cannot tell you what I wrote. If you question me, please understand I don't understand all of that." (Record at 114a)

"I never understood it all. My husband took charge of the finances and my brother took care of the estate. I am trying to understand all of this. Please don't expect me to understand it." (Record at 114a)

When, on cross-examination, appellant was questioned about notations that she had made on her financial records, her responses were faltering and evasive:

"Q. Referring to the top of the page, 'Trust', one trust—you have four trusts and you have encircled one as 901-903 Market Street, and alongside of that is a notation that appears in your handwriting, 'Net income about $13,000.00, child.' Does this mean per child?

A. I must tell you that this must have been written a couple of years ago. It is obviously my handwriting. I can't really tell. It takes time to get it in my head. I am not saying —"

On the other hand, when asked to discuss her budget (Record at 66a-68a, Exhibit P-5 at 226a-232a), or to testify to the relative contributions made by her father and husband to the purchase of a home (Record at 183a-185a), appellant showed an excellent memory for financial detail and an acute understanding of costs. I note that appellant's budget lists expenses for herself and her three children that total $44,628.00, a figure in excess of appellee's entire former annual income as an attorney at Dechert, Price and Rhoads (Record at 226a).

Appellant is a college graduate, who was working toward a Master's Degree in guidance counselling at the

time of the hearing. She stated that "[E]ducation is extremely important to me," Record at 60a, and claimed that she had financed her husband's way through law school. I find it difficult to believe that a woman with the education and values of appellant could be so uninformed about her personal financial situation as her testimony makes her appear.

Appellant's evasiveness about her financial resources makes evaluation of the adequacy of the support order extremely difficult. Moreover, the record provides very little information about her employment potential. Although appellant worked briefly during 1974, she appears to have not been employed during most of her marriage (Record at 82a). Thus, she will enter the labor market with certain disadvantages, despite her recent degree. Nevertheless, now that her three children are over eighteen, it is possible that appellant may be able to contribute more substantially than she has in the past to her own support and to the children's educational expenses.

IV

As the lower court recognized, Opinion at 242a, it is a well-established rule that in formulating an equitable support order, the court may look to earning capacity as well as to current earnings. *Commonwealth ex rel. Raitt v. Raitt,* 203 Pa. Superior Ct. 226, 199 A.2d 512 (1964); *Commonwealth ex rel. Hoffman v. Hoffman,* 184 Pa. Superior Ct. 500, 135 A.2d 822 (1957). "This is especially true where it appears that appellant voluntarily left his position with an extreme reduction in pay. The court may consider such a reduction as an intended circumstance, and . . . look to the earning capacity of the party." *Commonwealth ex rel. McNulty v. McNulty,* 226 Pa. Superior Ct. 247, 250-251, 311 A.2d 701, 703 (1973). *See also, Commonwealth ex rel. Wieczorkowski v. Wieczorkowski,* 155 Pa. Superior Ct. 517, 519, 38 A.2d 347,

348 (1944). Although we said in *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer, supra,* 226 Pa. Superior Ct. at 304, 310 A.2d at 673, that "It is the standard of living to which a family becomes accustomed that governs the calculation of a proper support order, consistent, of course, always with the husband-father's income and assets," I do not suggest that this court fashion a rule which would require that the wage earner in a support proceeding subordinate his valid professional aspirations to the needs of his family, and remain in a position which frustrates his ambitions. Such a policy would be unwise, particularly in the context of the instant case. If, however, the testimony taken at the rehearing fails to explain the marked inconsistencies between appellee's reported earnings and his actual expenditures, and if appellant's testimony justifies a more substantial support order, I would find it appropriate for the trial judge to consider appellee's potential earnings in formulating an order of support.

I question in particular the lower court's reliance on appellee's tax returns as indicia of his income, given such inconsistencies as an unwarranted alimony deduction. As we have said, it is appropriate for the hearing judge in a support case to look beyond the wage earner's tax returns to his actual cash flow:

> "The net income of a defendant as shown on income tax returns is not to be accepted in a support case as the infallible test of his earning capacity. Particularly is this true where the defendant is in business for himself and is allowed substantial business 'expenses', . . . which enable him to live luxuriously before spending his taxable income." *Commonwealth v. Miller,* 202 Pa. Superior Ct. 573, 577, 198 A.2d 373, 375 (1964).

*Commonwealth ex rel. Goichman v. Goichman, supra,* presented a situation similar to the one before us. There, an attorney had been ordered to pay $325.00 per week

for the support of his children. His earning capacity had been found by the lower court to be $60,000.00 per year in 1969 and 1970. However, he claimed that his income had been reduced, and supported this claim by submitting tax returns for the years in question which showed an earning capacity of approximately $13,000.00 and $20,000.00 (226 Pa. Superior Ct. at 316, 316 A.2d at 656). The lower court refused to rely on these returns and instead, looked at his expenditures which, by his own admission, included over $29,000.00 that he had lavished upon himself. In upholding this support order, we quoted from the lower court's opinion: "Respondent petitioned to reduce the amount of support awarded for his children, while continuing to live in a lavish style. This Court felt that if there was an actual decline in Respondent's income and assets, a corresponding change would be apparent in Respondent's life style." *Commonwealth ex rel. Goichman v. Goichman, supra,* 226 Pa. Superior Ct. at 316, 316 A.2d at 655.

It is true that we said in *Commonwealth ex rel. Haimowitz v. Haimowitz,* 221 Pa. Superior Ct. 364, 367, 292 A.2d 502, 504 (1972), that:

> "It is that standard of living, so reduced by the lesser salary, to which the lower court should have addressed itself, and not the standard of living that would have been afforded by defendant's prior job . . ."

That case, however, is distinguishable from the one before us. There, the wife had acquiesced in the husband's change of position before he gave up his better-paying job. Moreover, in contrast to appellee here, the husband made significant efforts to economize, such as moving in with his parents. The record before us does not show that the extenuating circumstances of that case, or of *Commonwealth ex rel. Shaffran v. Shaffran,* 92 Montg. Co. L.R. 339 (1969), *aff'd.,* 217 Pa. Superior Ct. 856, 270 A.2d 251 (1970), are present here.

## V

Were we in a position to have confidence in the record, I would have affirmed the order of the lower court. That order recognized that "[T]he current earnings of the parties are limited, and do not furnish the amounts necessary for the parties to continue to enjoy the standard of living to which they have become accustomed." Opinion at 249a. With such testimony as we have before us, however, I have no such confidence, and cannot tell whether the order has in fact been based on "a thorough analysis of the record as a whole," *Commonwealth ex rel. Grillo v. Shuster, supra* at 237, 312 A.2d at 63, or whether the correct legal standard was, in fact, applied. For this reason I would reverse and remand for a new hearing consistent with this opinion.

---

DISSENTING OPINION BY PRICE, J.:

Although I believe that the present circumstances indicate that the lower court abused its discretion by refusing to consider the potential earning capacity of the appellee in the formulation of its support order, I disagree with the majority's disposition of this case. As the majority correctly observes, appellate courts do not wish to substitute themselves as "super-support courts" because they "[h]ave not had the opportunity to see and hear the witnesses and so determine credibility." Yet, the majority not only concludes that the lower court abused its discretion, but also directs that the award be adjusted to a sum certain. In view of the above-stated principle, I believe that we should more properly remand to the lower court with directions to increase the amount of the award in a manner which reflects the factors discussed in the majority's opinion.

I would therefore reverse the order of the court below and remand with directions to increase the award in an amount consistent with the principles of the majority opinion.