## Brown v. Brown

*Judith E. Fellheimer,* for plaintiff.
*Henry L. Shrager,* for defendant.

GAWTHROP, *J.,* May 9, 1980—This case came before us on the complaint for support filed by Mary Jo Brown, plaintiff, seeking support for herself and the parties' son, Richard Brown, Jr., from defendant Dr. Richard Brown. After hearing, argument and the filing of briefs, the matter was taken under advisement. On July 6, 1979, we entered an order requiring Dr. Brown to pay $75 per week for his wife and child. From that Mrs. Brown has appealed, claiming that the amount is inadequate ". . .based on the facts and law set forth in plaintiff's memorandum of law. . ."[1] Accordingly, we write this opinion pursuant to Pa.R.A.P. 1925(a).

---

1. This five-page Memorandum, used by counsel for plaintiff at trial, was refiled in response to the court's order that plaintiff file a concise statement of matters complained of on appeal. See Pa.R.A.P. 1925(b). We do not consider it to be concise, nor can we discern from it which issues are of concern to plaintiff. See Matter of Harrison Square, 470 Pa. 246, 251, 368 A.2d 285, 288 (1977); Com. ex rel. Gavrish v. Gavrish, 27 Chester 42 (1979). We do not consider that all of

## FACTS

The parties were married on October 14, 1966, and had a child, Richard Brown, Jr., born October 18, 1973. In 1972, defendant enrolled in veterinary school, graduating in the spring of 1977. While he was a student, Mrs. Brown worked to support the family. The parties separated in 1978 and have lived apart since that time. Dr. Brown presently lives with a classmate, one Barbara Stewart, now also a V.M.D.

Dr. Brown is in the process of establishing a private practice in Chester County. At present he does not have an office, but rather, keeps his supplies in a station wagon and travels from patient to patient. Most of the patients are race horses at various local tracks. Although his 1978 gross business income was $29,707, this was severely diminished by overhead: his business expenses, which include drugs, laboratory fees, car expenses, interest on indebtedness, et cetera, totalled $21,839. After taxes, his net income was $6,189.[2]

At the hearing, he submitted financial information for the first three months of 1979, January 1 to March 31. For that period, his gross receipts were slightly in excess of $10,000, and his business expenses were approximately $6,000, leaving him a $4,000 before-tax income. Extrapolating from these figures, his 1979 before-tax income from the busi-

---

the issues raised in her brief must be treated here, as entitlement, for example, has been decided in her favor and we do not suppose that by her appeal she seeks the reversal of that determination. In short, we find the memorandum to provide little, if any, guidance.

2. The above information is based on Dr. Brown's 1978 Federal Income Tax Return.

ness, after deducting business expenses, would be approximately twice what he received in 1978, or $310 per week. In addition to his tax liability on that amount, Dr. Brown must repay his student loans, a further significant personal expense. This amount is $2,720 yearly, or $52 weekly. His weekly net available income, therefore, comes to approximately $200.

Mrs. Brown is presently employed, and her 1978 after-tax yearly salary was $7,650 or $145 per week.[3] Among her weekly expenses are included $22.50 for child care, reducing her available income to $122.50. Com. ex rel. Alexander v. Alexander, 27 Chester 286 (1979). She also owns a farm, valued at $56,000, from which she received $1,400 income in 1977. Although the income figure for 1978 was not documented, it was close to the 1977 amount. This comes to approximately $27 weekly, giving her a net available weekly income of $150.

## ISSUE

The principal questions raised by plaintiff's memorandum which appear pertinent to this appeal[4] center around our determination of defendant's earning capacity. Specifically, plaintiff claims that Dr. Brown's gross income cannot reliably be measured by his checkbook, and she further claims that we should include among Dr. Brown's financial resources the income and assets of Dr. Stewart. We rejected both claims in arriving at our support award.

---

3. See P-2.
4. See fn. 1, supra.

## DISCUSSION

### 1. Dr. Brown's Income

Both parties used the $10,000 figure called from Dr. Brown's checkbook record of receipts as a starting point in their analyses of his income. Mrs. Brown, however, further claimed that defendant received about $100 per week in cash which is not reported, and that his failure to bill for $3,000 worth of work performed during the first three months of 1979 caused an inaccurate representation of his first quarter income. The evidence presented at trial supported neither of these contentions.

We are mindful that the income claimed by a self-employed defendant must be carefully scrutinized, to determine whether the receipts are adequately documented, and the expenses claimed are true business expenses rather than hidden expenditures on personal luxuries. See Weiser v. Weiser, 238 Pa. Super. 490, 362 A.2d 287 (1976); Com. ex rel. Kaplan v. Kaplan, 219 Pa. Super. 163, 280 A.2d 456 (1973); Com. ex rel. Goichman v. Goichman, 226 Pa. Super. 311, 316 A.2d 653 (1973); Com. ex rel. Gavrish v. Gavrish, (No. 2), 28 Chester 12 (1979). While we therefore view the figures furnished by Dr. Brown with care, we may not indulge in the speculation advanced by plaintiff that he makes cash collections which are not reported, given the absence of any proof of this. See Com. ex. rel. Tizer v. Tizer, 214 Pa. Super. 444, 257 A.2d 683 (1969). Nor was any testimony elicited from any witness to show that Dr. Brown enjoys a life style beyond the $13,000 after-tax figure which we have attributed to him. See Goichman, supra.

Plaintiff asserts that defendant's bookkeeping is misleading, in that his records for the first three months of 1979 included over $3,000 worth of in-

voices for work done during that time, which had not yet been billed. We cannot agree that this shows his income to be $3,000 higher than stated; rather, we merely find that Dr. Brown's billing is not done on a completely current basis, and that every month there is an accumulation of unbilled invoices. The $10,000 received by Dr. Brown in January through March represented payment for work done previously, significant portions of which had not immediately been billed. In short, we are satisfied that Dr. Brown's delayed billing is sufficiently consistent that the first quarter of 1979 may be treated as typical for him.

### 2. Dr. Stewart's Income

Plaintiff cites Com. ex rel. Travitzky v. Travitzky, 230 Pa. Super. 435, 326 A.2d 883 (1974), in support of her claim that Dr. Stewart's income and assets constitute a part of Dr. Brown's financial resources. We find the facts of Travitzky to be distinguishable from this case, and further, that plaintiff has misstated the holding there.

In Travitzky the Superior Court held that questions addressed to the second spouse of a defendant in a support action, as to the amount of income contributed by that spouse to the family budget, were proper. The answers to such questions are relevant to defendant's claimed expenses, and, thus, ability to pay, because the availability of a second income defrays those expenses. The Superior Court, however, expressly rejected the claim advanced here by plaintiff:

"We do not agree. . . that the earnings of a wife, who marries the father of children from a previous marriage, should be considered a source of income to the father, and . . . should be added to the father's financial resources in computing the amount of a

support order for his minor children. . . . Should a parent remarry, as appellee has in the instant case, there is nothing in our law which requires the new spouse to support minor children of the prior marriage. We do not believe that such an extension of our support laws should be made.

". . . [t]o consider the separate assets or earnings of a second wife as an element of her husband's 'financial resources' belies the concept in our law that married individuals retain their legal identity and may own separate property and estates."[5] 230 Pa. Super. at 439, 440, 326 A.2d at 885. The Superior Court thus limited the relevance of the second spouse's income to a showing that household expenses were defrayed by being paid from that source.

Here, Dr. Stewart is not married to Dr. Brown, so there is still less basis than in Travitzky and its progeny for imputing her income and resources to him. Nor do Dr. Brown's claimed expenses reflect any jointly incurred costs of the Brown-Stewart household: the testimony showed that they divide equally such expenses as grocery and utility bills, and that he pays rent to her for her farm, which they occupy. Accordingly, we concluded that there was no factual basis for supposing that Dr. Brown's expenses are defrayed by Dr. Stewart's income or property.

## 3. Conclusion

Although Dr. Brown's profession is a lucrative one and his gross receipts are relatively substantial, he is in the process of establishing himself and has accumulated significant debts for his education and for needed equipment. We found that at this stage

5. Cf. Teslovich v. Johnson, 486 Pa. 622, 406 A.2d 1374 (1979); Grossman Estate, 486 Pa. 460, 406 A.2d 726 (1979.)

of his career he is not able to contribute to the support of his wife and son at the level which she apparently feels is appropriate for a veterinarian.[6] His income does appear to be increasing, and as his debts are paid off, his ability to pay a higher support order will doubtless increase.

For the moment, however, we found his net available weekly income to be somewhat in excess of $200, and Mrs. Brown's to be $150. Under the guidelines in effect in this county,[7] those figures entitle one dependent to $45-$50 weekly, and two dependents to $65 to $75. While Mrs. Brown is not "dependent" upon Dr. Brown, in that she is capable of supporting herself, we note that she made financial sacrifices during his student years and supported the family during that time. This important equitable consideration entitled her to a share of the increased earnings attributable to that period of time, see Com. ex rel. Bird v. Bird, 27 Chester 303 (1979). Cf. White v. White, 226 Pa. Super. 499, 313 A.2d 776 (1973). Accordingly, we awarded the maximum amount appropriate under the circumstances.

---

6. She asks $175 per week, a sum which we find to be unrealistic, completely disproportionate to these parties' respective earning capacities. The $25 it would leave him would not be merely unrealistic, but in fact punitive and confiscatory. See Com. ex rel. Roviello v. Roviello, 229 Pa. Super. 428, 323 A.2d 766 (1974); Com. ex rel. Hauptfuhrer v. Hauptfuhrer, 226 Pa. Super. 301, 310 A.2d 622 (1973).

7. See Com. ex rel. Alexander v. Alexander, supra.