380 A.2d 837

COMMONWEALTH of Pennsylvania ex rel. Blair
BURNS, Appellant,

v.

Rosemary BURNS.

COMMONWEALTH of Pennsylvania ex rel. Rosemary BURNS

v.

Blair BURNS, Appellant.

Superior Court of Pennsylvania.

Argued March 23, 1977.

Decided Dec. 2, 1977.

Sue N. Lang, Doylestown, with her Williams, Glantz & Schildt, Doylestown, for appellant.

No appearance entered nor brief submitted for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court abused its discretion: (1) by refusing to vacate or reduce an order requiring him to pay $20 per week for the support of his daughter and (2) by dismissing his petition requesting the court to order appellee to contribute to the support of the parties' two sons. We affirm the lower court's order dismissing appellant's petition to vacate or modify the $20 per week support order. However, we reverse the lower court's order dismissing appellant's petition that appellee be ordered to contribute to

the support of the parties' two sons and remand for reconsideration in light of this opinion.

On January 18, 1968, appellee filed a complaint in the Criminal Division of the Bucks County Court of Common Pleas charging appellant, appellee's husband, with desertion and non-support [1] of his three children, Michele, Michael, and Robert, then respectively four, three, and two years old. After a hearing on November 20, 1968, the lower court ordered appellant to contribute $35 per week to the support of his three children. Shortly after the initiation of these proceedings, appellant and appellee were divorced. On May 23, 1969, December 11, 1970, March 18, 1971, and July 13, 1972, the parties appeared before the lower court in connection with various petitions for attachment of appellant for failure to comply with court orders, remission of delinquencies, and modification of appellant's support obligations. After the July 31, 1972 hearing, the lower court ordered appellant to pay $47 per week support for his three children.

On February 25, 1974, the parties entered into a written agreement which sought to modify the existing $47 per week support order. The agreement stipulated that Michael and Robert now resided with appellant and that Michele resided with appellee. The parties agreed that appellant would pay $20 per week for the support of Michele plus $5 per week on account of $600 in accumulated arrearages. On February 26, 1974, the lower court, without a hearing, entered an order adopting the terms of the agreement.

On March 11, 1976, appellant filed a petition which requested vacation of the February 26, 1974 support order, the remission of arrearages, and an order requiring appellee to contribute $40 per week for the support of Michael and Robert. On April 13, 1976, appellee countered by filing a petition which requested the lower court to increase appellant's support payments for Michele to $50 per week. On April 12, 1976, appellant filed a petition pursuant to the Civil

1. Act of June 24, 1939, P.L. 872, § 733, as amended, Act of Sept. 26, 1951, P.L. 1494, No. 368, § 1, Act of July 3, 1957, P.L. 457, § 1, Act of July 31, 1968, P.L. 1037, No. 316, § 1; 18 P.S. § 4733 (Repealed 1972).

Procedural Support Act [2] which requested the court to vacate the existing support order and to direct appellee to contribute $40 per week to the support of her two sons residing with appellant.

On April 12, 1976, a Domestic Relations Officer of the Bucks County Court of Common Pleas conducted a conference between the two parties. Both parties filed financial statements disclosing their assets and liabilities, their respective incomes, and their claimed expenses. After failing to negotiate a settlement, the Domestic Relations Officer submitted a report recommending that the lower court continue, without modification, the February 26, 1974 support order, and that the court direct appellee to pay $40 per week towards the support of her two sons. [3]

On July 23, 1976, the lower court conducted a consolidated hearing on appellee's petition for an increase in the February 26, 1974 support order, appellant's petition for a vacation or reduction of that order, and appellant's petition for the entry of a new support order of $40 per week against appellee. The parties stipulated that the financial statements they submitted to the Domestic Relations Officer would become a part of the record, subject to evidence of change since the time of the conference. Appellee submitted her 1974 and 1975 federal income tax returns which revealed, respectively, gross incomes of $4119 and $5733. She testified that in November, 1975, she obtained a job working for a firm that printed church handbooks and manuals. Because she earned commissions rather than a specified salary, her weekly remuneration varied. However, appellee introduced a statement of earnings which disclosed a gross income of $186 per week and a net income of $149 per week over a 26 week period prior to the July 23, 1976 hearing. At this earning rate, appellee would receive $9,672

2. Act of July 13, 1953, P.L. 431, § 1 et seq.; 62 P.S. § 2043.31 et seq. Appellant apparently filed this petition because he believed that he could not initiate support proceedings against appellee by a petition filed in a case which originated in a criminal proceeding against him.

3. The record forwarded by the lower court regrettably does not contain a copy of this report.

gross income and $7,748 net income annually. Appellee's financial statement revealed that she and Michele lived in a house purchased by appellee in 1974. In order to finance this acquisition, appellee borrowed $5,000 from her aunt, arranged a $12,000 bank mortgage, and contributed $1,000 herself. Appellee did not adduce any testimony concerning the weekly expenditures necessary to liquidate her outstanding loan and mortgage obligations. According to appellee's financial statement, she spent $171.66 per week in order to raise her daughter. Finally, appellee testified that appellant told her that he would not obtain a job until the conclusion of the support proceedings.

Appellant presented the following testimony. Appellant's 1973, 1974, and 1975 federal income tax returns indicated respective gross incomes of $16,424, $16,790, and $14,030. In November, 1975, appellant, a Teamsters Union member, was laid off from his job as a truck driver and warehouseman. Appellant testified that after losing his job, he visited the Teamsters Union hiring hall every day for two or three months in an effort to secure employment. However, the union closed the hiring hall because too many companies in the area had gone out of business and over 400 union members had lost their jobs. Appellant asserted that he filed applications with "just about every trucking outfit" in the area, and that Pennsylvania state employment agencies had not been able to help him locate a job. Appellant did find one job with a Delaware Tastykake company, but reluctantly refused it because the job would have necessitated commuting 2½ hours to and from work each day. In May, 1976, appellant worked full time as a salesman at a car dealership for three weeks and earned approximately $290. Appellant testified that the state stopped sending his unemployment compensation checks of $133 per week during this three week period. When the car dealership reorganized at the end of May, appellant's job was terminated and the state resumed its $133 per week unemployment compensation payments.

Appellant testified that he remarried in 1969. He and the present Mrs. Burns live in a house in Levittown, Bucks County, with appellant's two sons, his daughter Barbara by a marriage prior to his union with appellee and two sons of the present Mrs. Burns by a previous marriage. Barbara moved into his house after the entry of the February 26, 1974 support order. Appellant is forty years old and in good health. The family's income consists of appellant's unemployment compensation payments and $30 per week earned by Mrs. Burns as a part-time domestic. The Burns also buy $110 worth of food stamps every month for $68. Appellant has an outstanding mortgage of $6,000 on his house, valued at $30,000, and makes monthly payments of $137. Appellant and Mrs. Burns own a lot, as tenants by the entireties, in Maryland. The lot is valued at $5,000, but the Burns still owe $4,000 in payments. Mrs. Burns owns a mobile home situated on the lot. Finally, appellant owns a 1973 Monte Carlo automobile.

At the conclusion of the hearing, the lower court dismissed all three petitions filed by the parties. In short, the court continued the February 26, 1974 support order without any modification. This appeal followed.

In *Costello v. LeNoir*, 462 Pa. 36, 40, 337 A.2d 866, 868 (1975), our Supreme Court recently articulated the governing standards for determining a parent's obligations to support his or her offspring: "It is beyond question that every parent has a duty to support his or her minor children. This duty of support rests upon both mothers and fathers; each parent is obligated to contribute to the support of his or her children in accordance with the parents' respective abilities to pay. *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974). Each parent's ability to pay is dependent upon his or her property, income and earning capacity, *Conway v. Dana*, supra 456 Pa. at 540, 318 A.2d at 326, and is to be determined as of the time at which support payments are sought, *Lindenfelser v. Lindenfelser*, 396 Pa. 530, 153 A.2d 901 (1968); *Jones v. Jones*, 348 Pa. 411, 35 A.2d 270 (1954); *Commonwealth ex rel. Simmler v. Simmler*, 134 Pa.Super.

339, 4 A.2d 215 (1938). A support order must be fair and not confiscatory and must make due allowance for the reasonable living expenses of the parent, *Commonwealth ex rel. Goodman v. Delara*, 219 Pa.Super. 449, 453, 281 A.2d 751, 753 (1971)." See also *Commonwealth ex rel. Kaplan v. Kaplan*, 236 Pa.Super. 26, 344 A.2d 578 (1975). A court may increase or decrease its original support if the financial conditions of the parties change. *Commonwealth ex rel. Luongo v. Tillye*, 229 Pa.Super. 453, 323 A.2d 172 (1974); *Commonwealth ex rel. Kaplan v. Kaplan*, 219 Pa.Super. 163, 280 A.2d 456 (1971). However, the party seeking to modify a support order bears the burden of demonstrating such a change of circumstances as will justify a modification. *Conway v. Dana*, supra; *Commonwealth ex rel. Luongo v. Tillye*, supra. When reviewing an original or modified support order, our appellate courts will not reverse a lower court's order absent a clear abuse of discretion. *Costello v. LeNoir*, supra; *Weiser v. Weiser*, 238 Pa.Super. 488, 362 A.2d 287 (1976).

## I.

■ First, we consider appellant's contention that the lower court abused its discretion in refusing to vacate or reduce the February 26, 1974 support order. The lower court held that neither party demonstrated a change in circumstances since February, 1974, sufficient to justify modification of the existing 1974 order. In particular, the court noted that the record did not adequately demonstrate the circumstances existing at the time of the February 26, 1974 support order; the court could only make a finding of a change in these unknown circumstances by engaging in impermissible speculation. *Commonwealth ex rel. Goodman v. Delara, supra.* Moreover, the court rejected appellant's claim that he could not find a job. Even if appellant could not in fact secure employment, the court stated that his unemployment would not constitute a permanent change in circumstances. *Commonwealth ex rel. Orlowitz v. Orlowitz*, 172 Pa.Super. 481, 94 A.2d 366 (1953). While we believe that appellant did establish a change in circumstances sufficient

to permit reconsideration of the 1974 support order, we hold that the lower court did not abuse its discretion in refusing to vacate or modify this order.

First, we note that the record adequately demonstrates a change in circumstances if appellant could not in fact locate a job after being laid-off in November, 1975. In *Commonwealth ex rel. Goodman v. Delara*, supra, our Court held that the trial court improperly speculated that appellant earned more income than the evidence, including an income tax return, indicated. We stated that the opposing party had the duty of rebutting appellant's evidence as to her earnings. In the instant case, appellee's 1974 federal income tax return disclosed a gross income of $4119; her present annual gross earnings total about $9,670. By contrast, appellant's 1974 federal income tax return indicated a gross income of $16,790; his present unemployment compensation benefits total about $6,900 per year. Moreover, appellant's daughter Barbara moved into his house after the entry of the February, 1974 order, thus increasing appellant's daily household expenses. Therefore, the record clearly demonstrates a marked reversal in financial fortunes since 1974. See *Costello v. LeNoir*, supra. Assuming that appellant could not in fact secure re-employment prior to the July 23, 1976 hearing, we believe that the doubling of appellee's gross income, appellant's unemployed status over an 8 month period with no tangible prospects for re-employment and a precipitous decline in income, and appellant's assumption of the daily living expenses of his daughter Barbara, constitute a sufficient change in circumstances to permit reconsideration of the February 26, 1974 support order.

The lower court also refused to find a change in circumstances because it believed that appellant could obtain a high paying job if he desired one. Our courts have repeatedly stated: ". . . [I]n formulating an equitable support order the lower court is not restricted to the defendant's actual earnings, but should also consider his earning power. *See, e. g., Commonwealth ex rel. Burns v. Burns*, 232 Pa.Super. 295, 331 A.2d 768 (1974); *Hecht v. Hecht*, 189

Pa.Super. 276, 150 A.2d 139 (1959). And, as we have previously declared: "This is especially true where it appears that appellant voluntarily left his position with an extreme reduction in pay. The court may consider such a reduction as an intended circumstance, and it may ignore the earnings and look to the earning capacity of the party.' *Commonwealth ex rel. McNulty v. McNulty*, 226 Pa.Super. 247, 250–251, 311 A.2d 701, 703 (1973)." *Commonwealth ex rel. Levy v. Levy*, 240 Pa.Super. 168, 173, 361 A.2d 781, 785 (1976). See also *Weiser v. Weiser*, 238 Pa.Super. 488, 362 A.2d 287 (1976). In the instant case, however, the undisputed evidence reveals that appellant was involuntarily laid off after three years employment as a trucker and warehouseman, that appellant made daily efforts to secure work at a Teamsters hiring hall ultimately shut down because of a paucity of available jobs in the area, and that appellant contacted numerous trucking firms and Pennsylvania state employment agencies in his quest for a job. Appellee offered no evidence of available job opportunities for men of appellant's skills during the economically troubled time of 1976. See *Lindenfelser v. Lindenfelser*, supra. While appellant did work for three weeks in May, 1976, as a car salesman, his uncontradicted testimony establishes that reorganization of the car dealership cost him his position. The lower court erroneously and repeatedly stated in its opinion that appellant quit that job. Despite appellee's testimony that appellant said that he would not get a job until after the support hearing, we believe that appellant's steady work history from 1973–1975[4] and the uncontradicted testimony of appellant's diligent efforts to secure re-employment belie the lower court's conclusion that appellant could have obtained work if he had so desired. *See Costello v. LeNoir*, supra.

4. In its opinion, the lower court stated that its notes of hearings held between September, 1968, and July, 1972, revealed that appellant had held and lost various jobs; according to the court's notes, appellant admitted quitting some of these jobs. Appellant's pre-1973 work history, however, has not been made a part of the record before us. At the July 23, 1976 support hearing, appellant testified that he had never voluntarily relinquished a job.

Although we believe that appellant did establish a sufficient change in circumstances between February 26, 1974, and July 23, 1976, to justify re-evaluation of the 1974 support order, we do not believe that the lower court abused its discretion in continuing without modification the $20 per week support order. Appellant received $133 per week in unemployment compensation; requiring him to spend $20 per week of this amount in support of his daughter Michele is not confiscatory or unfair. *Costello v. LeNoir*, supra. As the lower court noted, the food, clothing, housing, medical, dental, educational and recreational expenses incurred in raising a twelve year old undoubtedly exceed $20 per week by a substantial amount; at present, appellee pays all expenses in excess of $20 per week. It is not unreasonable to require appellant, receiving over $6,900 per year, to continue to contribute a minimal share to the expenses of raising his daughter. Therefore, we affirm the order of the lower court which continues the February 26, 1974 support order against appellant.

## II.

We next consider appellant's contention that the lower court abused its discretion in refusing to order appellee to contribute to the support of the parties' two sons residing with appellant. The lower court refused to enter such an order because it believed that appellant failed to demonstrate his inability to support the two children without contribution from appellee or appellee's ability to make a contribution. *Costello v. LeNoir*, supra, and *Conway v. Dana*, supra, instruct us that both mother and father are obligated to contribute to the support of his or her children in accordance with his or her respective ability to pay. In the instant case, appellee, supporting one child, earns about $9,600 gross income and $7,748 net income per year. Appellant, supporting three children, receives unemployment compensation benefits of about $6,900 per year.[5] His present

5. The lower court, without citing any statutes or regulations, took judicial notice that appellant is entitled to $3 per week more in

wife earns about $30 per week, or about $1500 per year, but has two children of her own to support.[6]  Appellee clearly has as much, if not more, ability as appellant to contribute to the support of her two sons.  *Costello v. LeNoir*, supra; *Commonwealth ex rel. Kaplan v. Kaplan*, 236 Pa.Super. 26, 344 A.2d 578 (1975); *Commonwealth ex rel. Travitzky v. Travitzky*, supra.  Because appellee receives a higher net annual income than appellant while supporting fewer children, the lower court manifestly abused its discretion in refusing to enter a support order requiring appellee to contribute to the support of her two sons.  Therefore, we reverse the order of the lower court dismissing appellant's petition for support of his two sons and remand for reconsideration in light of this opinion.

Order continuing February 26, 1974 support order against appellant affirmed.  Order dismissing appellant's petition for support of his two sons reversed and remanded.

SPAETH, J., files a concurring and dissenting opinion.

VAN der VOORT, J., dissents.

unemployment compensation benefits because of Barbara's presence in his household.

6.  In its opinion, the lower court queried why appellant's present wife did not receive welfare assistance payments for her two sons.  In *Commonwealth ex rel. Travitzky v. Travitzky*, 230 Pa.Super. 435, 326 A.2d 883 (1974), our Court refused to consider the separate assets or earnings of a new husband or wife as an element of his or her spouse's "financial resources" for purposes of determining an appropriate support order.  However, if the new husband or wife voluntarily contributed a portion of his or her earnings to the family budget, the court could properly consider such contributions in computing his or her spouse's "ability to pay."  Consequently, if appellant's present spouse applied for and received welfare benefits for her two children, then a portion of appellant's unemployment compensation benefits which now help support his wife's two sons might be released to help support his own children.  Nevertheless, even if we speculate that welfare assistance payments would totally relieve appellant of the necessity of supporting his wife's two sons, appellant would still be required to support his two sons and two daughters on $6,900 per year while appellee, making $7,748 net income per year, would only have to help support one of her three children.

SPAETH, Judge, concurring and dissenting:

I agree that we should reverse the order holding that appellee need not contribute to the support of her two sons. In my opinion, however, we should also reverse the order requiring appellant to continue to contribute $20.00 a week to the support of his daughter.

As the majority opinion decides, appellant met his burden of proving a change of circumstances, both with respect to himself and appellee. This change may be summarized, in round figures, as a reduction in appellant's income to half of what it was, and an increase in appellee's income to twice what it was.

In affirming the lower court's order continuing appellant's $20.00-a-week payment, the majority says that "[i]t is not unreasonable to require appellant, receiving over $6,900 per year, to contribute a minimal share of the expenses of raising his daughter." At 403. I do not see how the majority can be sure that it is not unreasonable. Whether $20.00 is a "minimal share" of the expenses of raising the parties' daughter is a question that cannot be answered on the record as we have it, for the record contains only appellee's summary statement that she spends $171.66 a week to raise the daughter. Unexplained, this statement is not acceptable. The child is only thirteen or fourteen years old.

If the question of the daughter's support were taken in isolation, I might agree that $20.00 a week sounds roughly right in the circumstances. The parties' incomes are roughly the same; a teenaged daughter probably costs at least $40.00 a week to feed, clothe, and care for; and thus the $20.00-a-week payment is roughly right as appellant's one-half contribution towards the daughter's support. However, the question of the daughter's support was not below, and is not here, the only issue in this case. Rather, in the consolidated action, the question was, and is, the parties' respective obligations to their three children. To affirm one order and to reverse the order, as the majority does, will result in piecemeal resolution of what is a unitary problem.

The better way to solve this problem, I believe, would be to reverse both orders. Then, after determining in one proceeding the reasonable expense to appellant of raising the two sons, and to appellee of raising the daughter, the lower court could proceed to an equitable allocation according to the parties' respective incomes. By affirming the order as to appellant, the majority has in effect already determined how one side of this equation should read, with the result, I am afraid, that on remand it will prove impossible to make the equation balance.