461 A.2d 630

**Dorothy R. ROBERTS,**

v.

**Joseph C. BOCKIN, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1983.

Filed June 10, 1983.

Colin M. Jenei, Yardly, for appellant.

Denis M. Lanctot, Morrisville, for appellee.

Before CERCONE, President Judge, and JOHNSON and MONTEMURO, JJ.

CERCONE, President Judge:

Appellant, Joseph C. Bockin, Jr., takes this appeal from the order of the court below directing appellant to pay $48.00 per week towards the support of his minor son, Christopher, who is in the custody of appellant's ex-wife, appellee, Dorothy R. Roberts. In this appeal, appellant raises three issues. On one of these issues, we find no error. We are, however, unable to resolve the two remaining issues because the record does not contain sufficient information, accordingly, this case must be remanded for further hearings.

On September 2, 1981, appellee filed a petition against appellant for support of the parties' minor son, who was born September 14, 1968. A conference was held in the Domestic Relations Office on November 10, 1981, after which a temporary interim order of $20.00 per week was entered without prejudice to either party as to the issues of amount of support or of its retroactivity. Thereafter, a hearing was held before the common pleas court on January 14, 1982. At this hearing, appellee testified that she was employed as an administrative sales assistant earning a net, bi-weekly salary of $324.86. Her expenses, however, for her and her son were said to be twice that of her salary; appellee testified that her weekly expenses were $319.54.[1]

Much of the rest of the questioning of appellee, particularly on cross-examination, focused on appellee's prior employment history, and it is on this fact that appellant bases his first issue. According to appellee's testimony, for a period of six years prior to August, 1979, appellee worked as an executive secretary for U.S. Steel Corporation. However, in August of 1979, appellee, citing a need "to get

---

1. Apparently, appellee did file a financial statement, however, this statement is not part of the record.

away from the pressures here," quit her job, sold her home, and moved to England with her son, Christopher. When she was unsuccessful in obtaining employment there, she and Christopher moved to Florida. Upon encountering similar difficulties in Florida, appellee returned to the Bucks County area, where, after a year of searching, she obtained her present job. Listing these facts, appellant now contends that appellee's present financial circumstances are the result of her voluntary decision to quit her job with U.S. Steel and to use the proceeds from the sale of her home for travel and living expenses. Appellant thus argues that the lower court abused its discretion in failing to find that appellee's earning capacity exceeds her present income and in failing to determine the amount of the support award on that basis.

 It has been held that a parent may not intentionally reduce his or her earnings and then use the reduction in earnings to obtain a reduction in the amount of support which that parent must provide for his or her children; courts have traditionally viewed with suspicion any sudden reduction of payments toward support based on such income reductions. *Commonwealth ex rel. Darling v. Darling*, 300 Pa. Superior Ct. 62, 445 A.2d 1299 (1982); *Commonwealth ex rel. Burns v. Burns*, 251 Pa. Superior Ct. 393, 380 A.2d 837 (1977); *Weiser v. Weiser*, 238 Pa. Superior Ct. 488, 362 A.2d 287 (1976), *Snively v. Snively*, 206 Pa. Superior Ct. 278, 212 A.2d 905 (1965). The rationale underlying these decisions is that a parent has a duty to his or her children and therefore a parent should not be permitted to evade that responsibility by deliberately reducing his or her income. This rule, however, is not without its exceptions. As we noted in *Weiser v. Weiser, supra*, 238 Pa. Superior Ct. at 492, 362 A.2d at 288–289:

> [W]e are not constrained to say that a man once he has established a certain income level for himself and his family in the employ of another cannot decide to go into business for himself even though it results in a decrease of his present earnings. A man should have freedom of

choice to be an employee of another or to establish his own business even though such change may result in present financial sacrifice with the hope of future increased income.

The rule, of course, applies to both parents, since the support of children is the equal responsibility of both the father and the mother. *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974).

In the instant case, we find that appellant has omitted several pertinent facts from his argument. The record shows that when appellee quit her job with U.S. Steel, she was suffering from an ulcer and that her doctor suggested that she get away or else she wasn't going to get better. At that time appellee was feeling a lot of stress as a result of the custody and support dispute. Furthermore, appellee's quitting her job wasn't the rash move that appellant would make it seem since the U.S. Steel office in Fairless, where appellee worked, was, in any event, due to be closed in a few months, and, in fact, has been closed. Appellee went to England because she had a son stationed there with the Air Force who said that he had a friend in personnel at the base who could get appellee a job without any difficulty. As it turned out, when appellee arrived in England, there were new people in personnel and appellee was unable to get a job. After staying in England for two months, appellee returned to the United States, this time going to Florida where her father, sister, and two other sons lived, all of whom lent appellee money to live on. Appellee remained there until March of 1980, when she returned to the Bucks County area. After a further year of searching, appellee finally succeeded in finding the job which she now holds.

It is apparent that appellee did not quit her job with U.S. Steel to avoid supporting her child. Rather, she did so at the suggestion of her doctor because of her ulcer. Additionally, appellee went to England because she had an apparently good chance of getting a job there. When it became clear that she could not find a job in England,

appellee moved to Florida where several members of her immediate family resided. Appellee has at all times sought employment and has never attempted to elude her parental responsibilities. We thus find appellee's situation to be comparable to that in *Commonwealth ex rel. Darling v. Darling, supra,* and *Commonwealth ex rel. Burns v. Burns, supra,* where the respective parties were laid off and unable to find other work. In these cases, we ruled that the parties' actual earnings, and not their income potential as demonstrated in the past, was the proper measure of their ability to support their children. We likewise hold in appellee's case and accordingly find that the lower court did not abuse its discretion on this issue.

In his next two issues, appellant alleges error in the court's consideration of the income of appellant's second wife, Sandra, in the computation of appellant's ability to pay child support. At the outset, it must be noted that although a new spouse cannot be required to support his or her spouse's minor children of a prior marriage, it is nonetheless permissible for the court to take into consideration the financial contributions of the new spouse to the new household when calculating the responsible spouse's ability to pay child support. *Shank v. Shank,* 298 Pa. Superior Ct. 459, 464, 444 A.2d 1274 (1982); *Astillero v. Shotwell,* 294 Pa. Superior Ct. 222, 439 A.2d 831 (1982); *Commonwealth ex rel. Hagerty v. Eyster,* 286 Pa. Superior Ct. 562, 429 A.2d 665 (1981); *Commonwealth ex rel. Travitzky v. Travitzky,* 230 Pa. Superior Ct. 435, 326 A.2d 883 (1974).[2]

**2.** Indeed, the instant case demonstrates how relevant such evidence can be. Appellant claimed at the hearing to be operating a trucking business for a number of years which, when it isn't losing money, isn't making much money either. In 1978, appellant's business, although grossing $53,019.23, had a net loss of $277.79. In 1979, the business grossed $51,698.01, but only showed a profit of $1180.46. And in 1980, the business had a gross income of $41,209.64, but a net income of only $4,975.04.

Furthermore, we note that some of the discrepancy between appellant's gross and net income on his tax returns is the result of deductions for depreciation and the like. Our courts have concluded that the federal government's decision not to tax particular items does not control the calculation of earning power as one of the elements in

In the instant case, appellant argues that there was insufficient evidence to show that appellant was able to make support payments in the amount of $48.00 per week, as was ordered. Specifically, appellant takes issue with the Court's including as income to appellant's household the amount of $12,500.00 that appellant's second wife had been receiving from the estate of her late husband. Appellant now asserts that, while Sandra Bockin did receive this income through 1980, she is no longer receiving said income. Our review of the record shows this to be a point which is far from clear. Some of the confusion on this issue can be attributed to appellant himself, for, as the record shows, although appellant received a subpoena to bring to court any documentation regarding his spouse's income, including her Social Security income and her inheritance, appellant did not have this information with him, testifying that he had no such documentation. We do have in the record copies of appellant's tax returns for the years 1978, 1979, and 1980 and all of these returns show that appellant's wife received an income of $12,500.00 in those years from her late husband's estate. In his present appeal, appellant now says that the evidence of his ability to pay support was insufficient because at one point during the hearing appellant was asked generally if his new spouse received any other income than Social Security, and appellant responded in the negative without elaboration. We find that the record is unclear on this point and so further hearing must be held to clarify this issue.[3]

Likewise, further hearings will have to be held before appellant's last issue can be resolved. Appellant argues that the court's order was confiscatory and imposes an unreasonable burden on appellant because the order took into consideration Sandra Bockin's inheritance income.

determining a support order. *Commonwealth v. Redavid v. Redavid,* 251 Pa. Superior Ct. 103, 380 A.2d 398 (1977).

**3.** Of course, on remand more recent evidence of appellant's income will have to be explored.

Since the evidence was not clear we cannot now decide this issue.

Accordingly, although we find that the court correctly assessed appellee's income, the case must nevertheless be remanded for a full hearing because there is insufficient evidence of appellant's ability to pay. *Shank v. Shank, supra.*

The Order of the court below is vacated and the matter is remanded for further hearings. This court does not retain jurisdiction.