J-A21032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MEGEN KARAKELIAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JORDAN LaVINE, | : | |
| | : | |
| Appellant | : | No. 3470 EDA 2015 |

Appeal from the Order entered October 27, 2015
in the Court of Common Pleas of Delaware County,
Domestic Relations Division, No(s):  PACSES 018113330

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 28, 2016**

Jordan LaVine ("Father"), *pro se*, appeals from the Order entered by the trial court establishing his child support obligations in connection with his divorce from Megen Karakelian ("Mother").[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  ***See*** Trial Court Opinion, 1/12/16, at 1-6.

On appeal, Father raises the following issues for our review:

1. Did the trial court err in calculating [Father's] net income for child support purposes at $41,027.00 per month, based on the court's failure to deduct: (a) [Father's] full 2015 [f]ederal tax liability; (b) any Medicare or Social Security taxes owed or paid by [Father]; and (c) any alimony payments made by [Father] to [Mother] in 2015; to derive this net income, in contravention of Pa.R.C.P. 1910[.]16-2[?]

2. Did the trial court err in assigning [Mother] an annual earning capacity of $10,000 (less than minimum wage), although she

---

[1] The parties have three minor children (hereinafter "the children").

is an attorney with seven years of litigation experience, previously earned $52,00[0]-$63,000 when she was last working, has 50% custody, with the parties' children all in full day school, has had almost 5 years since separation to get back in the workforce, and has made no effort to obtain employment during that time frame?

3. Did the court below err in not holding an evidentiary hearing, not considering or apparently reviewing the brief and exhibits [Father] submitted in advance of the hearing and during the October 22, 2015 hearing (including an expert report on [Mother's] earning capacity and [Father's] W[-]2-which the court stated were not provided), and not taking evidence on other factors relevant to the determination of the correct support amount?

4. Did the trial court err in concluding that [Father's] new spouse's income justified an upwards deviation, although [Mother] never even made that argument, there was no evidence in the record supporting that conclusion, and the law cited by the court on that point was not good law?

5. Did the trial court err in concluding that no adjustment was required for shared custody in high income cases, although [Mother] never even raised that argument, there was no evidence in the record supporting that conclusion, and the law cited by the court on that point was not good law?

Father's Brief at 5-6.

When evaluating a [child] support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***Kimock v. Jones***, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

Additionally, the fact-finder, having heard the witnesses, is entitled to weigh

the evidence and assess its credibility. ***Baehr v. Baehr***, 889 A.2d 1240, 1245 (Pa. Super. 2005).

Support orders "must be fair, non-confiscatory and attendant to the circumstances of the parties." ***Fennell v. Fennell***, 753 A.2d 866, 868 (Pa. Super. 2000) (citation omitted). "[I]n determining the financial responsibilities of the parties to a dissolving marriage, the court looks to the actual disposable income of the parties." ***Id***. (citation omitted). "[W]hen determining income available for child support, the court must consider all forms of income." ***Berry v. Berry***, 898 A.2d 1100, 1104 (Pa. Super. 2006) (citation omitted); ***see also*** Pa.R.C.P. 1910.16-2(a).

In his first issue, Father contends that the trial court acknowledged that, pursuant to Pa.R.C.P. 1910.16-2, alimony, Social Security taxes and Medicare taxes should be deducted from a parent's income in order to determine that parent's net income, but nevertheless failed to deduct these items when determining Father's net income. Father's Brief at 22. Father points to the trial court's determination, as stated in its Pa.R.A.P. 1925(a) Opinion, that Father waived this issue because he failed to specifically request these deductions during the hearing, and asserts that this issue is not waived because the court was required to consider all relevant evidence when determining his earning capacity. ***Id***. at 22, 24-25. Father also claims that contrary to the trial court's ruling that Father failed to formally move his W-2 into evidence, "[t]he trial court had [Father's] W-2 and it was

- 3 -

referenced during the hearing." *Id*. at 22. Father argues that the trial court further erred by ruling that it could disregard Father's alimony payments to Mother because such payments had ceased as of the date of the support hearing. *Id*. Father additionally challenges the trial court's determination that Father failed to provide the court with any meaningful calculations, and contends that he provided the court with support calculations, performed with software, which included the alimony, Social Security tax, Medicare tax, and estimated federal tax deductions. *Id*. at 22-23. Father asserts that he did not know that these deductions were not made by the trial court until after the support hearing, and that he brought the error to the trial court's attention before the support Order was entered. *Id*. at 23. Father claims that, because the trial court failed to consider these deductions, it improperly calculated his net income. *Id*. at 25-26.

The trial court addressed Father's first issue, set forth the relevant law, and concluded that it lacks merit. *See* Trial Court Opinion, 1/12/16, at 9-11. We discern no abuse of discretion by the trial court in making its determination, which is supported by the record, and affirm on this basis as to Father's first issue. *See id*.

In his second issue, Father contends that the trial court erred in assigning Mother's earning capacity at $10,000 per year. Father's Brief at 28. Father concedes that Mother was unemployed for a portion of their marriage, but asserts that Mother has remained unemployed since their

separation in 2011. *Id*. Father claims that, if Mother wishes to remain unemployed, then Father and his current wife should not be "required to subsidize [Mother's] unilateral decision indefinitely." *Id*. Father argues that the trial court should not have considered Mother's post-separation unemployment when determining the length of time Mother has been "out of the market" as an attorney. *Id*. Father contends that the trial court did not want to consider his expert report on Mother's earning capacity, and "provided no justification for choosing $10,000 [per year] as [Mother's] earning capacity." *Id*. at 29-30. Father also contends that the trial court failed to consider Mother's significant assets, including her investment account and stock gains. *Id*. at 30-31. Father asserts that the trial court's assignment of Mother's earning capacity at $10,000 per year discourages Mother from working. *Id*. at 31.

Father also challenges the trial court's consideration of Mother's care of the children during Father's custodial time when determining her earning capacity, and claims that both parties have helped out with the children during the other parent's custodial time. *Id*. Father argues that the trial "court's conclusion is particularly inappropriate in this case because [Father and current wife] _already_ employ a full time childcare giver." *Id*. at 32 (emphasis in original). Father contends that "the children would be better served by [Mother] working." *Id*.

The trial court addressed Father's second issue and concluded that it lacks merit. **See** Trial Court Opinion, 1/12/16, at 11-12. We discern no abuse of discretion by the trial court in making its determination, which is supported by the record, and affirm on this basis as to this issue. **See id**.; **see also Baehr**, 889 A.2d at 1245.

In his third issue, Father contends that the trial court deviated from the Guideline amount without supporting evidence or findings of fact. Father's Brief at 33. Father asserts that the matter was scheduled for an oral argument and not for an evidentiary hearing. **Id**. at 34. Father claims that the trial court "did not indicate that it had reviewed [Father's] brief and exhibits, was willing to hear witness testimony, or was willing to hold an evidentiary hearing." **Id**. Father argues that an evidentiary hearing should have been held because the trial court deviated from the Guideline amount for support. **Id**. Father contends that, during the support hearing, he was not given a chance to cross-examine Mother, and that he referenced several documents that were not acknowledged or reviewed by the trial court. **Id**.[2]

Father did not raise this issue in his court-ordered Pa.R.A.P. 1925(b) Concise Statement. **See Krebs v. United Ref. Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues

---

[2] Father seemingly argues that this Court should consider issues that he initially raised in his Motion for Reconsideration, which the trial court denied. Father's Brief at 35. However, Father concedes that the trial court's Order denying his Motion for Reconsideration is a non-appealable Order. **Id**.

that are not raised in his concise statement of errors complained of on appeal). Therefore, it is waived.[3]

In his fourth issue, Father contends that the trial court erred in finding that his current wife's income ($165,000 per year) justified an upwards deviation. Father's Brief at 35-37.

Father did not raise this issue in his Concise Statement. Therefore, it is waived. *See Krebs, supra*.[4]

In his fifth issue, Father contends that the trial court erred by determining "that shared custody need not be considered in high income cases." Father's Brief at 37-38.

Father did not raise this issue in his Concise Statement. Therefore, it is waived. *See Krebs, supra*.[5]

Order affirmed.

---

[3] Even if Father had not waived this issue, we would have determined that it lacks merit. Indeed, our review of the record reveals no abuse of discretion in the trial court's determination, which is amply supported by the record. *See* Trial Court Opinion, 1/12/16, at 1-6 (wherein the trial court provided a thorough explanation of the admissible and *inadmissible* evidence presented by the parties, detailed the evidence it considered in making its determinations, and listed its findings of fact).

[4] Even if Father had not waived this issue, we would have determined that it lacks merit for the reasons expressed by the trial court. *See* Trial Court Opinion, 1/12/16, at 11.

[5] Even if Father had not waived this issue, we would have determined that it lacks merit for the reasons expressed by the trial court. *See* Trial Court Opinion, 1/12/16, at 11; *see also* Pa.R.C.P. 1910.16-4(c)(2) (providing that the trier of fact may enter a support order against either party based upon the evidence presented).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
PENNSYLVANIA

CIVIL ACTION – LAW

MEGEN KARAKELIAN            :
                                          :        Del.Co.C.C.P.No.: 2012-001478
            Plaintiff/Appellee,           :
                                          :        PACSES No.: 0181133 **30**
      v.                                  :
                                          :        Superior Court No.: 3470 EDA 2015
JORDAN LAVINE                             :
                                          :        IN SUPPORT
            Defendant/Appellant.          :

Jordan LaVine, Esquire, Self-Represented
385 Yorkshire Road; Bryn Mawr, PA 19010

Megen Karakelian, Esquire, Self-Represented
216 Trianon Lane; Villanova, PA 19085

## OPINION

**CARTISANO, J.**                    **DATE: January 12, 2016**

Appellant Jordan Lavine (hereafter "Father") appeals from the October 27, 2015 order

entered in the Delaware County Court of Common Pleas, which requires Father to pay child

support to Megen Karakelian (hereafter "Mother") in the amount of $4,300.00 monthly for the

support and maintenance of the parties' three minor children.

By way of background, the parties were married on June 30, 2001 in Wilmington,

Delaware and had three children during the course of the marriage, the youngest of whom is

seven years old.  On or about June 21, 2012, following Father's filing of a Complaint in

Divorce, Mother filed a Complaint for Support with Domestic Relations seeking spousal and

child support.  The support matter, as well as various discovery issues, was before multiple

support masters and judges and various modifications to the support orders were made during the

history of this case.  On or about April 7, 2014, the parties entered into a Stipulation for Agreed

1

Order of Support whereby the parties agreed, in pertinent, that Father shall pay to Mother child support in the amount of $4,300.00 per month and that the child support provision shall not be modifiable until December 31, 2014 and the parties further agreed that Father's spousal support shall terminate on August 31, 2015. On or about April 10, 2014, the parties' stipulation was approved as an Order of Court.

On or about March 3, 2015, as permitted by the parties' stipulation, Father filed a Petition for Modification of Support Order, seeking a reduction in his child support obligation on the following basis: (1) Because his alimony payments to Wife were scheduled to cease per the terms of the Stipulation, he could no longer take the alimony payments as a deduction on his tax returns, increasing his tax liability and decreasing his net income, and (2) Mother should be imputed an income.

On or about April 8, 2015, the matter was listed before Master Jane McNerney and based on the oral motions of both parties during the course of the hearing, the support master ordered the parties to exchange certain financial information and relisted the matter for June 1, 2015. The support master's directives were signed as an Order of Court by the Honorable William C. Mackrides on April 9, 2015. Curiously, Father appealed the April 9, 2015 order, which granted his discovery request before the support master could hear substantive evidence on Father's entitlement to a reduction in child support. On or about June 2, 2015, Father filed a "Brief in Support of Petition to Modify," the contents of which complains inappropriately, in part, of alleged contempt issues against Mother. On or about June 8, 2015, Father's appeal of the April 9, 2015 Order was remanded back to the support master for purposes of a substantive hearing.

On or about July 9, 2015, after a full and fair hearing before the support master, the master entered a recommendation setting Father's base support at $4,300.00 per month with

2

arrears assessed at the standard ten percent. The master's recommendations were signed as an Order of Court on July 10, 2015. On or about July 21, 2015, Father appealed the July 10, 2015 Order and a hearing *de novo* was scheduled before the Honorable Linda A. Cartisano for October 22, 2015.

During the course of the hearing, the parties' stipulated that Father's gross annual income was $706,000.00 for purposes of determining child support. (N.T. 10/22/2015, at p. 15). Father also testified that his alimony ended in August 2015 and that including his new wife's income, the annual gross household amount is $827,000.00. (N.T. 10/22/2015, at p. 17). Father presented his federal income taxes for the year 2014, and the Trial Court was permitted by the parties to utilize Father's federal income tax returns in arriving at Father's net income. In calculating Father's net income, the court took Father's gross income minus the tax implications found directly in Father's federal income tax return. (N.T. 10/22/2015, at p. 21). The trial court found that based upon his tax return and Father's testimony with respect to the earnings of his new wife, that Father "has 83% of the marital income so his tax would be $164,242, and that's federal" (N.T. 10/22/2015, at p. 22). The trial court likewise calculated Father's share of the state tax and local tax, finding that Father's net monthly income was approximately $43,000.00 (N.T. 10/22/2015, at p. 22).[1] The trial court also took into consideration every deduction which Father presented to the court to arrive at his net income, including Philadelphia wage tax, health insurance, and the 50/50 custody of the children. (N.T. 10/22/2015, at p. 21-22). Importantly, at no point did Father request the trial court to deduct Social Security withholdings or Medicare withholdings or alimony payments from the amount the parties' stipulated to use as the gross number nor is it the trial court's responsibility to present Appellant's case for him. Because the

---

[1] The Court: "Well, I took your 706. I took – you are 83 percent of the joint income so I took your federal tax. You would then – you paid 197,000. 83 percent of that is 164,242. I then took 83 percent of the state tax you paid, which was I think 26,000.

number the parties agreed to utilize for Father's gross annual income, $706,000.00, differed from what was reflected in the tax returns, it is clear that the parties' had already made some adjustments on their own. The trial court therefore, utilized information from Father's 2014 federal tax returns and stated on record how the calculations were being performed, leaving it up the parties' to request deductions which were not taken into consideration in their own arrival at Father's stipulated annual gross income. Furthermore, as Father never expressly make this request during the course of the hearing, the trial court utilized the "total tax" line from Father's 2014 joint tax return, which the court was permitted to utilize by the parties at the time of trial.

Furthermore, the trial court learned during the course of the hearing that Mother had taken steps to activate her law license, a necessary precursor in securing meaningful employment within her field. Indeed, Mother testified that she has been "actively regaining the CLE credits that I [Mother] need in order to reactivate the license." (N.T. 10/22/2015, at p.5). Mother also produced proof that her prior application to reactivate her law license was rejected, but that she has since complied with the requirements and "is now in a position to reapply to have her license reactivated." (N.T. 10/22/2015, at p. 6). The trial court considered the length of time Mother has been out of the market, the economic climate for unlicensed attorneys in this area, and Mother's testimony that she aids Father in childcare during his custodial time when requested, in deciding what income to impute Mother. (N.T. 10/22/2015, at p. 24, 40). Mother also established that she is deriving some income in the management of a rental property, and the trial court utilized the income from Mother's 2014 tax return in addition to imputing some income.

Furthermore, the trial court found that Mother produced evidence indicating that she was being proactive about reactivating her law license. Additionally, although Father contends that Mother's earning capacity should have been imputed at $50,000.00, he failed to present any

4

testimony from a vocational expert or other substantive evidence to support his contention.[2] Indeed, the only thing resembling evidence was Father's hearsay statements concerning certain postings he had seen with respect to paralegal positions in Center City Philadelphia that allegedly pay $50,000.00 - $70,000.00. Father, however, failed to produce any of the job postings he referenced with respect to this salary range nor the qualifications required. Indeed, not only is the law constantly evolving but even legal research skills and administrative aspects of the law have greatly changed with the advent of electronic legal resources and filing systems. Father produced no evidence that Mother possessed the qualifications for these alleged positions, although a vocational expert may have given an expert opinion with respect to Mother's qualifications and the general salary in her field.

The trial court likewise considered Mother's 2014 federal tax returns which showed that Mother had approximately $16,000.00 in income from dividends and rental on her returns. The trial court added back in the depreciation less the taxes Mother would have paid on the depreciation had it been included in her income. (10/22/2015, at p. 13). The trial court also imputed income to Mother, although not as much income as Father would have liked.

On October 27, 2015, the trial court entered an Order requiring Father to pay $4,300 per month for child support, 92% of the agreed upon costs for daycare and extra-curricular activities, and payment of the children's health insurance. The trial court also entered the following Findings of Fact supporting the content of the October 27, 2015 Order:

1. Plaintiff's income is calculated at $3,500 net per month. This amount is calculated

   from her 2014 Federal Income Tax Return which lists dividend income of $16,000.00

---

[2] The record reflects that Father had filed an "Emergency Motion to Compel Vocational Interview Before Support Hearing Date of April 22, 2014" which by Order dated March 20, 2014 compelled Mother to attend a vocational interview scheduled for March 28, 2014. If Father proceeded with the retention of a vocational expert, he failed to present any evidence, including findings with respect to an earning capacity for Mother.

and depreciation on a rental property of $20,000.00. The Court deducted 11% for taxes. In addition, the Court imputed approximately $10,000.00 of income to Plaintiff on a yearly basis.

2. Defendant's income is calculated at $41,027.00 based on his 2014 Federal Income Tax Return.

3. Defendant pays $700.00 per month for health insurance for the parties' minor children. Plaintiff's share would be $560.00.

4. The Court has deviated from the Guidelines in the amount of $139.00 per month because Defendant's 2014 Tax Return reflects a deduction for alimony paid to Plaintiff which is substantially reduced for 2015 resulting in a larger tax liability for Defendant.

5. Plaintiff and Defendant share custody of the children on an equal basis.

6. The Court finds that Plaintiff is attempting and should shortly complete the requirements to reinstate her law license to active status.

On or about November 4, 2015, Father filed a Motion for Reconsideration which now requested additional deductions never requested at the time of trial. For the first time, Father requested in his Motion for Reconsideration that the trial court consider new arguments with respect to calculation of Father's net income. The trial court denied the Motion for Reconsideration and the October 22, 2015 Order was timely appealed. On or about November 16, 2015, the trial court issued a 1925(b) Order and Father timely filed a Statement of Matters Complained of on Appeal.

On appeal, Father makes the following complaints:

6

1. The Court incorrectly concluded that based on Mr. LaVine's 2014 tax return and W2, that Mr. LaVine's net income was $41,027/month, inflating his net income by over $6,000.00 per month.

2. The Court did not deduct any Social Security taxes that Mr. LaVine paid in 2014 and will pay in 2015 to arrive at his net income for support purposes. Pa.R.C.P. 1910:16-2 requires that these taxes be deducted (stating that they "shall" be deducted) and Ms. Karakelian has not even disputed that the taxes should be deducted.

3. The Court did not deduct any Medicare taxes that Mr. LaVine paid in 2014 and will pay in 2015 to arrive at his net income for support purposes. Pa.R.C.P. 1910:16-2 requires that they be deducted and Ms. Karakelian has not even disputed that they should be deducted.

4. The Court did not deduct any alimony payments that Mr. LaVine paid in 2014 and/or 2015 to arrive at his net income for support. Mr. LaVine paid Ms. Karakelian $116,00 in additional alimony in 2014 and $35,000 in additional alimony in 2015. Pa.R.C.P. 1910:16-2 requires that alimony paid to Ms. Karakelian be deducted to arrive at net income.

5. The Court compounded the problem of not deducting any alimony paid to Ms. Karakelian by deducting only the amount that Mr. LaVine actually paid in Federal income taxes in 2014 to arrive at his net income. These 2014 Federal income taxes were of course lower than they will be in 2015 and later years, because of the $116,000 alimony deduction that significantly decreased Mr. Lavine's Federal income taxes for 2014. The Court was attempting to calculate Mr. LaVine's 2015 support obligation.

6. The Court assigned Ms. Karakelian an earning capacity of $10,000 per year (which is less than minimum wage), although Ms. Karakelian is an attorney with seven (7) years of litigation experience, previously earned $53,000-$63,000 per year when she was working, and had had almost 5 years since separation to get back in the workforce. She does not work and does not have to work because of Mr. LaVine's alimony and child support payments (which have been higher than what is required and total over $680,000) and the significant liquid assets she received in the divorce settlement (her investment account has apparently appreciated to over $1 million since the parties' divorce), but she is certainly capable of earning more than $10,000/year. This holding is directly contrary to the Superior Court's holding in *D.H. v. R.H.*, 2006 PA Super 125, 900 A.2d 922 (2006)(Reversible error to assign earning capacity of $15,837 to mother); *Yerkes v. Yerkes*, 573 Pa. 294, 297-298, 824 A.2d 1169, 1171 (2003) ( the duty of child support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father."). Over the past 4 ½ years, despite hearing after hearing, the Court has essentially given Ms. Karakelian a "free pass" on making no effort to find employment, which is contrary to both the law and its treatment of other parents. The parties have 50/50

7

custody and their children are all in full day school, so Ms. Karakelian has sufficient time to attempt to find employment.

7. Mr. LaVine filed his Petition to Modify his support obligation on March 5, 2015, but despite two masters' conferences and one judicial hearing between March and October, the Court did not appear to actually perform the support calculations until October 22, 2015, when the Court miscalculated the correct support amount, as set forth above. The correct child support amount is less than $3,850/month, even if Ms. Karakelian is assigned no earning capacity.

8. On October 22, 2015, the Court also erred in not considering the brief that Mr. LaVine filed in advance of the hearing and the support calculations submitted by Mr. LaVine (done with support software), which included the deductions identified above. The Court erred in not conducting an evidentiary hearing. Mr. LaVine also submitted a letter to the Court right after the hearing regarding the calculation errors, before a final order was entered, which is attached hereto as Exhibit A. The Court did not respond to the letter and refused to grant Mr. Lavine's request for a phone conference or for a further hearing to correct the errors, before entering the final October 27, 2015 Order.

9. Finally, the Court erred in denying Mr. LaVine's Motion for Reconsideration without a hearing on November 16, 2015. For the reasons set forth in the Motion for Reconsideration, the decision should be reversed and the order modified and the child support amount reduced, retroactive to at least March 3, 2015, which is the date on which Mr. LaVine filed his Petition to Modify.

## DISCUSSION

On appeal, Appellant only makes four substantive arguments: (1) the trial court should have deducted his Social Security withholdings in arriving at Appellant's net income, (2) the trial court should have deducted Appellant's Medicare tax withholdings in arriving at his net income, (3) the trial court should have deducted the alimony payments Appellant made in arriving at his net income and consider the increased tax implications when Appellant was no longer permitted to deduct alimony payments, and (4) the trial court should have imputed Appellee a greater earning capacity. The remainder of Appellant's complaints appear to be ramblings about errors which allegedly occurred at the mater's level and other unappealable issues such as the court's

8

refusal to grant a reconsideration hearing or hold a telephone conference after the record was closed.

**A. The Trial Court was Justified in Assessing Appellant's Net Monthly Income for Purposes of Determining Child Support at $41,027.00.**

Generally, the Superior Court will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the child support order. Morgan v. Morgan, 99 A.3d 554 (2014). Additionally, when evaluating a child support order, the Superior Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. W.A.M. v. S.P.C., 95 A.3d 349 (2014) (The Superior Court will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order).

Finally, it is well established that the appellate court will not ordinarily reverse the court below for not doing what it is not asked to do. Whistler Sportswear, Inc. v. Rullo, 289 Pa. Super. 230, 433 A.2d 40 (1981). Pennsylvania Rule of Appellate Procedure 302(a) unequivocally states as a general rule that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. The rationale for the rule was clearly expounded by the Pennsylvania Supreme Court in Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A.2d 114 (1974) where the Court reasoned: "Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal." Furthermore, the Court continued, "This process removes the professional necessity for the trial counsel to be prepared to fully litigate the case fully and create a record adequate for appellate review." Id. It is well settled that "a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal." Jones v. Jones, 878 A.2d 86, 90 (Pa. Super. 2005).

9

In the instant matter, not only did Appellant, an attorney by trade, fail to request the trial court during the course of the hearing to deduct Social Security and Medicare withholdings, he likewise failed to formally move into evidence his W-2 information which would contain said information and as such, this was not made part of the record. Appellant also failed to provide direct testimony with respect to what those withholdings were. The trial court, although providing Appellant abundant opportunity to present his case and make requests with respect to items he wished deducted from his gross income to arrive at his net income, failed to properly do so. Appellant, although self-represented, is an attorney by trade and likewise a review of Appellant's income makes it clear that his decision to be self-represented was not driven by financial necessity. The trial court, therefore, holds Appellant to the same standard as an attorney in spite of his self-representation and expects Appellant to present evidence to the trial court and properly enter exhibits into the record in accordance with the Pennsylvania Rules of Civil Procedure, which Appellant failed to do.

Appellant next claims that the trial court should have deducted the alimony he had paid to Appellee in 2014 and a portion of 2015 to arrive at his net income. Importantly, at the time of trial Appellant testified that his alimony obligation to Appellee had ceased. Additionally, Appellant's petition for modification was filed in 2015; therefore the trial court was not empowered to modify support prior to the filing date. Next, Appellant requested the trial court to speculate what his tax consequences would be for 2015 and 2016 without the inclusion of an alimony deduction, failing to provide the trial court with any meaningful calculations, arguments, or evidentiary support. Without this pertinent information, Appellant's request was tantamount to a request for the trial court to speculate about his tax liability going forward. Furthermore, the trial court took into consideration Appellant's argument concerning alimony

10

payments to Appellee and the increased tax consequences to the extent possible and awarded a slight deviation to Appellant on such basis.

Furthermore, there is sufficient evidence contained in the record to support the trial court's order. Other household income can justify a deviation from the support guideline amount. Pa. R.C.P. 1910.16-4(b)(3), Schenk v. Schenk, 880 A.2d 633 (Pa. Super. 2005), McCarty v. Smith, 655 A.2d 563 (Pa. Super. 1995). While the Pennsylvania Superior Court has found that a current spouse of a party has no obligation to support his or her stepchildren, the spouse's contribution to the family expenses is relevant because that contribution makes more of the parent's income available for support. Pa.R.C.P. 1910.16-5(n), note citing, Com. ex. Rel. Travitzky v. Travitzky, 326 A.2d 883 (Pa. Super. 1974); Roberts v. Bockin, 461 A.2d 630 (Pa. Super. 1983. Appellant testified during the course of the hearing that his current spouse is also an attorney with an approximate annual gross income of $165,000.00. (N.T. 10/22/2015, at p. 18). Additionally, the trial court is not required to adjust child support in high income cases to account for shared physical custody by the parents. Baehr v. Baehr, 889 A.2d 1250 (2005). Therefore, notwithstanding Appellant's failure to properly request deductions or introduce into evidence testimony or documents with respect to his Social Security and Medicare withholdings, the evidence presented at trial nonetheless supports the trial court's order on other grounds in the record.

B. **The Trial Court Was Justified in Imputing Appellee $10,000.00 and Including Her Actual Earnings**

Although the trial court imputed income to Appellee of $10,000.00, in addition to including her actual 2014 earnings and indeed adding back in certain deductions, Appellant's main complaint is that Appellant was not imputed enough income. In support of his contention,

11

Appellant cites D.H. v. R.H., 900 A.2d 922 (2006), a Superior Court case which is highly distinguishable from the facts presented in the case at issue. Most notably, the Superior Court in D.H. v. R.H. found that the trial court's intentional disregard of Mother's most current tax returns and decision to use the prior year's earnings because "it would be inappropriate to assign an earning capacity for [mother's] first year back" constituted error. Id.

In the instant case, the trial court not only utilized Appellee's actual current earnings, but added deductions back in and assigned an earning capacity. Furthermore, Appellant presented no testimony or evidence with respect to establishing an earning capacity of $50,000.00, an amount which he contends should have been imputed to Appellee. Indeed, at most, Appellant makes generalized statements about Appellee's past earnings when she possessed an active law license. Appellee produced evidence during the course of the hearing that she had undertaken steps to reactivate her law license and resume practice. No testimony or evidence was presented as to what Appellee could make in the current economic market with no active law license. Indeed, although the record reflects that Appellee at one point had retained a vocational expert, no expert opinion with respect to earning capacity was presented to the trial court. Furthermore, Appellee testified that while she was awaiting approval of her application to reactivate her law license, that she has made herself available to Appellant for childcare. The trial court, therefore, in its reasonable discretion imputed Appellant an additional $10,000.00 income.

## CONCLUSION

Wherefore, for the reasons elicited above the trial court entered an Order dated October 27, 2015, which requires Appellant to pay child support to Appellee in the amount of $4,300.00 monthly for the support and maintenance of the parties' three minor children.

BY THE COURT:

_Linda A. Cartisano_
J.

NOTICE PURSUANT TO RULE 236
MAILED_____1/12/16____
DOMESTIC RELATIONS